# FIRST NATIONAL BANK OF MEXICO, Appellant, v. RAGSDALE.

## Division One, December 11, 1900.

1. **Chattel Mortgage: TITLE: NOMINAL MORTGAGE: NON-DELIVERY: DRY TRUST.** Where the maker of a chattel mortgage makes the note, which it is given to secure, payable to a person to whom he owes no debt, and then indorses the name of such payee thereon, and sends it and the mortgage to another, and requests him to indorse and sell the same and send to him the proceeds, which was done, there was no title to the mortgage in the payee of the note, because there was no debt on which to base it; nor was any title in fact conveyed to him (as to a passive trustee unconnected with an interest) because the deed was never delivered to him. Consequently, it was not necessary for the nominal mortgagee to assign the mortgage in order to pass the title.

2. **————: ————: NEGOTIABLE NOTE: PURCHASE FROM MAKER: PROOF OF INDORSEMENT: REPLEVIN.** The *bona fide* purchaser of a negotiable note from the maker himself (or from one to whom the maker indorses it with instructions to sell it and remit the proceeds, which in legal effect is the same as a purchase from the maker himself), is not required, in a suit of replevin for the stock covered by a mortgage given to secure said note, to prove the genuineness of the maker's indorsement thereon, so long as the maker holds possession of said stock, either by himself or some one for him.

3. **————: ————: ————: ————: ————: PLEADING: ESTOPPEL.** In a suit for the replevin of stock under a chattel mortgage given to secure the payment of a note of which the plaintiff has become the *bona fide* purchaser, he is not required to plead facts which would estop the maker of the note from attempting to show that it was not indorsed by the mere nominal payee, if the maker is the actual owner of the stock sued for and in possession of them.

4. ———: ———: ASSIGNMENT: EQUITY SUIT. Under our statute, section 540, Revised Statutes 1899, it is not necessary for the plaintiff in replevin to resort to a court of equity, before he can recover possession of stock covered by a mortgage executed to secure a note made by the owner of the stock to a nominal payee, whose name is by the maker indorsed thereon, and sent, along with the mortgage, without assignment by the nominal payee, to another, with the request that he sell it, pay himself, and remit him the proceeds, if the maker is the real owner and in possession of the stock.

5. ———: REPLEVIN: PURCHASE OF NOTE: PLAINTIFF. If the plaintiff in replevin is in effect the purchaser from the mortgagor of the note secured thereby, he is, as against such mortgagor, entitled to all the rights of an original mortgagee and can maintain a statutory replevin for the stock.

6. Negotiable Note: NOMINAL PAYEE: INDORSEMENT BY MAKER. The making of a note payable to a real person, who had no interest in the transaction and no knowledge of it and the indorsement of the payee's name thereon by the maker, and the putting of the same on the market by him, is the same in effect as if the maker had used a fictitious name, and then indorsed the name of such fictitious person thereon. As long as it is a matter between the maker and the holder, no question can arise as to the genuineness of the signatures that were on the note when it left the maker's hands.

7. Chattel Mortgage: DESCRIPTION OF CATTLE. The description of the property mortgaged was "one hundred and twenty head of feeding cattle now on feed in Audrain county, Mo." The evidence tends to show that the lot of cattle in suit belonged, at the time of the replevin, to the mortgagor, and were at the date of the mortgage in Audrain county. Held, that until the mortgagor produces some evidence to show that he had another lot of cattle filling that description and that it was the lot covered by the mortgage, the description referred to this lot.

8. ———: ASSIGNMENT: NOMINAL MORTGAGEE: RATIFICATION. As it is unnecessary to show that a note to a nominal payee, who had no interest in the transaction and knew nothing about it, was indorsed by such payee and the mortgage assigned by him, in order for the introduction of the mortgage in evidence in a replevin suit by a bona fide purchaser thereof, so it was not necessary for plaintiff in making out his case in chief to show that such nominal payee had ratified the unauthorized use of his name. Ratification could, in such case, only be shown in rebuttal, after the defendant had introduced evidence tending to show title in himself.

9.　**Pleading**: REPLEVIN.　A petition in replevin that avers that plaintiff is the owner and lawfully entitled to the possession of the property is sufficient to show plaintiff's interest therein.

10.　———: PROOF.　A fact admitted in the answer need not be proven by plaintiff.

Appeal from Audrain Circuit Court.—*Hon. E. M. Hughes,* Judge.

REVERSED AND REMANDED.

*W. W. Fry* and *W. M. Williams* for appellant.

(1)　(*a*) The assignee of a note secured by a chattel mortgage can maintain in his own name an action of replevin for the recovery of the mortgaged property.　The indorsement of the note (if valid) carried the mortgage (if it was a legal instrument) with it.　The debt and security are inseparable.　The assignee of a note secured by a chattel mortgage may in this state maintain replevin in his own name. Kingsland & Ferguson Mfg. Co. v. Crissman, 28 Mo. App. 308; Christie v. Scott, 31 Mo. App. 331; Willison v. Smith, 52 Mo. App. 133.　(*b*) The mortgagor indorsed the name of the payee upon the note and procured the money upon the same.　He treated the mortgage as a completed instrument. Neither he nor anyone holding the cattle for him, or in his right, will be heard to say that said mortgage was never delivered.　York Bank v. Asbury, 1 Bissel 230; Meacher v. Fort, 30 Am. Dec. 364; 2 Daniel on Negotiable Instruments (4 Ed.), p. 375, secs. 1354 and 1355; 3 Randolph on Commercial Paper, sec. 1781.　So, too, where one obtains money upon a chattel mortgage, he will not afterwards be heard to say that it was not what he represented it to be.　Herman on Estoppel, secs. 903 and 926; Tyler v. Hall, 106 Mo. 313.　(*c*)

Plaintiff bank was not bound to set out in its pleadings the title upon which it relied, and it was not necessary that an estoppel, arising in the manner above stated should be pleaded. Tyler v. Hall, *supra*. (2) Defendant then and there promised to hold the cattle subject to said mortgage. If it was necessary to show that he accepted the chattel mortgage and ratified the indorsement upon the note, this was certainly sufficient. "A mortgage made and filed without the knowledge of the mortgagee is valid if afterwards accepted by him." There were no intervening rights of third persons in this case; hence when defendant ratified the mortgage executed to him, it related back and became effective as of the date of its execution. Kingman & Co. v. Buggy Co., 150 Mo. 282; Fischer Leaf Co. v. Whipple, 51 Mo. App. 181; Enworth v. King, 50 Mo. 477; 2 Cobbey on Chattel Mortgages, sec. 570; Jones on Chattel Mortgages (4 Ed.), sec. 113; 1 Devlin on Deeds (2 Ed.), sec. 276; Commercial Bank of Buffalo v. Warren, 15 N. Y. 577. (3) Defendant objected in the trial court to the mortgage for the reason that the description of the cattle was insufficient. The court properly overruled this objection. The description was good even as to third parties, and the chattel mortgage could not have been properly excluded on that ground. The cattle in this suit were those intended to be included in the mortgage. The 120 head, at the time of the execution of the mortgage, were in Audrain county, and it does not appear that they were mingled with other cattle, and the record does not show that Crockett B. Ragsdale had any other cattle in Audrain county at that time. 1 Cobbey on Chattel Mortgages, sec. 171; Jennings v. Sparkman, 39 Mo. App. 663; State ex rel. v. Cooper, 79 Mo. 464. The description was certainly sufficient as against the mortgagor, and anyone holding the cattle for him. Houser v. Andersch, 61 Mo. App. 20; Jones on Chattel Mortgages (4 Ed.), sec. 55.

*Geo. Robertson* for respondent. *J. H. Whitecotton* and *J. C. Piersol* of counsel.

(1) The rule is universal that the plaintiff in actions of replevin must recover, if at all, upon the strength of his own title and not upon the weakness of that of his adversary. Cobbey on Replevin, sec. 99; Eastern v. Flemming, 78 Ind. 116; Reinheimer v. Hemingway, 35 Pa. St. 432; Stanley v. Neale, 98 Mass. 343; Goodman v. Kennedy, 10 Neb. 270; Holler v. Colson, 32 Ill. App. 324; Kennedy v. Dodson, 44 Mo. App. 550; Moore v. Carr, 65 Mo. App. 64; Springfield v. Shackelford, 65 Mo. App. 364; Gartside v. Nixon, 43 Mo. 138; Sheble v. Curdt, 56 Mo. 437. If the mortgage in question was not evidence of title to the cattle in plaintiff, then as the proof discloses, the defendant was in lawful possession; defendant was entitled to recover for his actual possession, which being a lawful one was evidence of title against those who do not show a better one. Summons v. Austin, 36 Mo. 307. (2) The mortgage is void for lack of sufficient description. The description in the petition is probably good enough, but that in the mortgage is as follows, "one hundred and twenty head of feeding cattle now on feed in Audrain county." The mortgage further provides that the cattle "to remain in my possession until default," etc., and further provides against removal "from my farm." Crockett B. Ragsdale owned no farm in Audrain county and the cattle could not have been on his farm in that county. Hence, the description can not be aided by the reference to his farm or by providing that the cattle should remain in his possession on the farm, for he had neither farm nor possession of the cattle. Hughes v. Menefee, 29 Mo. App. 192. (3) The note was made by C. B. Ragsdale payable to the order of C. C. Ragsdale. The mortgage names C. C. Ragsdale as the mortgagee.

C. C. Ragsdale never was nor in any way became a party either to the note or to the mortgage. A delivery of the note was essential to its validity, and as it was never delivered to C. C. Ragsdale if the note ever had any validity it began with plaintiff's accepting it and paying for it. Then it was that Lattimer's indorsement became of any effect. Neither did the note have any validity, if ever any, till Latimer indorsed it and had delivered it to the plaintiff. The signature of C. C. Ragsdale having been forged, this indorsement did not operate to transfer any title to the note, therefore plaintiff never had title to the note and could not maintain action thereon. Quigley v. Bank, 80 Mo. 289; Danna v. Underwood, 19 Pick. 99; Lancaster v. Baltzel, 28 Am. Dec. 233, 7 Gill & Johnson, 468; Jackson v. Bank, 38 Am. Dec. 204, 2 Robinson, 128; Foltier v. Schroder & Schreiber, 92 Am. Dec. 521, 19 La. Annual, 17; State Fire Ins. Co. v. National Bank (N. H.), 19 Cent. L. J. 452. As a matter of course if plaintiff had no title to the note it had none to the mortgage and could enforce no right under it. Jones on Chattel Mortgage, sec. 501. The plaintiff could not prove its title to the note or mortgage, as the indorsement of C. C. Ragsdale was a forgery. It had no title. It is not in that regard as though the note had been made payable to a fictitious person, for in this case the maker had in mind and intended it for a real person. Am. and Eng. Ency. of Law (2 Ed.), p. 117, n. 2; Shipman v. State Bank, 126 N. Y. 318, 22 Am. St. Rep. 821; Kohn v. Watkins, 26 Kan. 691, 40 Am. Rep. 336; Foster v. Shattuck, 2 N. H. 446; Rodgers v. Ware, 2 Neb. 29; Bollers v. Stearns, 11 Cush. (Mass.), 320; Rowe v. Putnam, 131 Mass. 281; Graham v. Nova Scotia Bank, 12 Nova Scotia 251. (4) While it may be true that on the ground of estoppel the maker of the note, C. B. Ragsdale, can not deny the genuineness of C. C. Ragsdale's indorsement, this is not

the position of the parties here. Plaintiff is compelled to prove its title to the cattle in the mortgage and in order to do so must prove its title to the note and mortgage. This it can not do unless it can prove the indorsement of C. C. Ragsdale. Armstrong v. National Bank, 15 Am. St. Rep. 655; Shipman v. Bank, 26 N. Y. 318; Rowe v. Putman, *supra*. (5) Admitting, without conceding, that plaintiff as between it and Crockett B. Ragsdale has a title to the note, and that as between him and plaintiff the note could be enforced, yet there is no mortgage. Neither note nor mortgage was ever delivered to defendant. Delivery is essential to constitute validity. Under the most favorable phase of the case plaintiff could have only an equitable interest in the mortgage. An equitable title will not support replevin. Cobbey on Replevin, sec. 100; secs. 1236-1237 and n. 1, p. 189; France v. Thomas, 86 Mo. 80; McQuie v. Peay, 56 Mo. 56. (6) Plaintiff's petition is fatally defective as it does not state the facts showing either plaintiff's special or general interest in the property. It does not state the facts constituting the cause of action. Benedict v. Jones 60 Mo. App. 219, sec. 592, R. S. 1899. The petition contains only such allegations as are required in the affidavit. Sec. 4493, R. S. 1899. It does not contain a plain, concise statement of the facts constituting the cause of action.

VALLIANT, J.—This is an action in replevin for 120 head of cattle. The title asserted by plaintiff is founded on a chattel mortgage executed by Crockett B. Ragsdale, brother to defendant Clarence C. Ragsdale, out of whose possession the cattle were taken by the sheriff under the writ. Upon the trial, when the plaintiff offered the mortgage in evidence, it was on objection of defendant excluded by the court, judgment for defendant necessarily followed that ruling, and the

plaintiff appeals.    The only question for our consideration is
as to the correctness of that ruling.

There was testimony tending to show that the cattle were
the property of Crockett Ragsdale the mortgagor, and were
at the date of the mortgage on pasture in Audrain county, but
were, about April 1, 1896, removed to a pasture in Monroe
county.    The evidence that the cattle were the property of
Crockett Ragsdale is contained in his deposition and in the
admissions to that effect by the defendant to the witnesses,
Latimer, Wilfley, and Gentry.    We are not concerned with
the matter of the weight to be given this evidence; it is suffi-
cient for our present purpose that it tends to prove the fact.

The instrument in question was in the ordinary form of a
chattel mortgage, dated December 13, 1895, made and signed
by Crockett B. Ragsdale, purporting to convey to the defendant
Clarence C. Ragsdale "one hundred and twenty head of feed-
ing cattle now on feed in Audrain county, Mo.," to secure a
note of same date for $3,500, payable May 1, 1896, to the
order of C. C. Ragsdale.    This note was not made to evidence
a debt owing by Crockett to Clarence, but for the purpose of
raising the money on it in bank as was done.    The note and
mortgage were executed at Hannibal, without the knowledge
of Clarence and were mailed by the maker to W. A. Latimer,
at Sedalia, to whom Crockett was indebted to an amount of
over $2,000, with the request that he, Latimer, indorse the
note and get it discounted, pay himself out of the proceeds,
and remit the balance to him, Crockett.    Before mailing the
papers to Latimer, Crockett indorsed the name of his brother
Clarence on the note without the knowledge of Clarence.
Latimer indorsed the note and sent it to a broker in St. Louis
to be sold, and it was, through that broker, sold to the plaintiff
in this case, the First National Bank of Mexico.    Latimer
sent the mortgage to Audrain county to be recorded and that

was done.  The broker who sold the note sent the proceeds, amounting with interest to something over $3,500 to Latimer, who deducted the amount that Crockett was owing him and remitted the balance, $1,175, to Crockett, who deposited it in a bank at Perry to the credit of Clarence, and there was testimony tending to show that it was used in part payment for the cattle in question, which had previously been bought, or negotiated for.

There were other facts brought out in the evidence, but they are of a character chiefly to influence the mind in weighing the evidence as to some of the facts above stated and it will not be necessary to set them out here.  Enough is stated to enable us to judge of the correctness of the ruling of the trial court in excluding the mortgage from evidence.

The trial court ruled that inasmuch as the note was payable to the order of Clarence and he was the mortgagee, and the note was never indorsed by him, therefore the legal title to the cattle was by force of the mortgage in Clarence, and that if the plaintiff had any right under the mortgage, "it needed the interposition of a court of equity to give it force," and for that reason excluded it as evidence.

It does not appear from the evidence, and we do not understand that it is now claimed, that Clarence had any real interest in the note or mortgage, or that he claims title to the cattle by virtue of the mortgage.  Crockett owed him no debt, at least none so far as the evidence shows; there was nothing therefore upon which to base a valid mortgage from Crockett to Clarence; there is nothing on which to predicate a claim by Clarence through the mortgage.  The only connection he has in it is the unauthorized use of his name in the transaction.  If the previous business course between the two brothers was not such as to justify Crockett in indorsing Clarence's name on the note, then in legal effect the misuse

that was made of his name neither imposed liability on nor created a right in him.    The learned trial judge in delivering his views, said:   "As to the mortgage, it never was delivered. The same assignment did not accompany the mortgage as accompanied the note.    The title to that was in C. C. Ragsdale, if in any one.    What legal title did the bank have to it?    It is not the assignee in any sense."    That view rests on the assumption that the bank must trace its title to the mortgage through assignment from the nominal mortgagee.    But that assumption rests on the further assumption that the title to the mortgage was in the nominal mortgagee, which, as we have seen, was not the case; there was no title, *de jure*, in him, because there was no debt on which to base a mortgage, and there was no title in fact conveyed to him, as to a passive trustee unconnected with an interest, because the deed was never delivered to him; there was therefore, so far as he is concerned, no execution of the mortgage. But the fact remains that Crockett Ragsdale, who for the present at least we assume to be the owner of these cattle, issued these papers in the form of a note, apparently duly indorsed and the mortgage to secure it, issued them in this form for the purpose of putting them on the market and did put them on the market, and by such means induced the plaintiff to believe that the note and mortgage were what they purported to be, and thereby obtained from the plaintiff the full value of the paper computed as honest and genuine; now, therefore, as against his title the court is not going to hear any question as to the genuineness of the indorsement or other impeachment of the paper.    Since the plaintiff is in legal effect a *bona fide* purchaser of the note from Crockett Ragsdale, himself, the plaintiff is not required as against him or anyone holding possession for him to prove the genuineness of the indorsement; it is sufficient to prove that the note was so indorsed when Crockett put it on the

market, and the law will not allow him to say it is not genuine. [2 Daniel on Neg. Inst. (4 Ed.), secs. 1354, 1355; 3 Randolph Com. Paper, sec. 1781.]. Plaintiff could not under such circumstances anticipate that an attempt would be made by Crockett Ragsdale or anyone defending for him to impeach the indorsement and therefore was not required to plead the facts as an estoppel. [Bigelow on Estoppel (5 Ed.), p. 698; Tyler v. Hall, 106 Mo. 313.]

The learned trial court was of the opinion that the plaintiff had no legal title to the mortgaged property because there had been no assignment of the mortgage itself by the nominal mortgagee and that if the plaintiff had any right at all "it would need the interposition of a court of equity to give it force," and the conclusion drawn was that as replevin is an action at law, plaintiff could not maintain the suit in its own name. That was the condition under the old procedure at common law. In Jones on Chattel Mortgages, sec. 501, it is said: "The mortgagee's legal interest does not, however, pass by his assignment of the debt. Such assignee can not maintain replevin in his own name for the mortgaged property; though he may, in the absence of any express or implied stipulation to the contrary, bring such an action in the name of the mortgagee, who holds, in such case, the legal title in trust for such assignee's benefit." In the same way a suit on any assigned chose in action, except commercial paper, would have to be brought in the name of the assignor to the use of the assignee. But under our statute, section 540, Revised Statutes 1899, "every action shall be prosecuted in the name of the real party in interest." This section embraces as well rights of the character of these in question in this suit, as those under assignment of an ordinary chose in action. This doctrine was declared by our Kansas City Court of Appeals in a carefully

considered opinion by PHILIPS, P. J.:   Kingsland v. Chris-
man, 28 Mo. App. 308.   In that case after showing that the
beneficial interest in the mortgage followed the assignment of
the debt, and the assignee became the real party in interest,
it was said:   "The spirit and object of the statute will be best.
expressed and executed by allowing this plaintiff to proceed in
his own name, immediately, to enforce his possessory right
under the mortgage, rather than to compel him either to
resort to the circumlocution of a bill in equity to compel an
assignment of the legal title, or to bring replevin in the name
of the mortgagee."   To the same effect also is Willison v.
Smith, 52 Mo. App. 133.

But the plaintiff in this case is in effect the purchaser
from the mortgagor himself and is, as against him, entitled
to all the rights of an original mortgagee.   If a note should
be made payable to bearer and the maker sell it in that form
the title would pass by sale and delivery.   If it be made
payable to a fictitious person, and the maker indorse the name
of the fictitious payee upon it, and so put it upon the market,
the effect would be the same as if it were payable to bearer.
And if the maker should make like use of the name of a real
person who has no interest in it, and no knowledge of it,
it would be the same in effect as if he had used a fictitious
name.   As long as it is a matter between the maker and the
holder, no question can arise as to the genuineness of the sig-
natures that were on the paper when it left the maker's hands.
The mortgage in this case, as against Crockett Ragsdale,
passed to the plaintiff without assignment from the nominal
mortgagee, as an incident to the purchase of the note, and
upon maturity of the debt and default in payment the plain-
tiff was entitled to the cattle, if they belonged to Crockett
Ragsdale.

It is objected that the description of the property in the

mortgage is not sufficient.    The description is "one hundred
and twenty head of feeding cattle now on feed in Audrain
county, Mo."    The evidence tends to show that the lot of
cattle in suit belonged to Crockett Ragsdale and were at the
date of the mortgage on feed in Audrain county.    Until he
produces some evidence to show that he had another lot of
cattle filling that description and that it was the lot covered
by the mortgage and should have been taken under the writ
instead of this lot, the description will be held to refer to
this lot.    He can not be heard to say that the description is so
vague as to be meaningless, as long as the evidence shows a lot
of cattle to which it may apply, nor can anyone holding pos-
session under his title make a similar objection.    Therefore,
when the plaintiff showed that the note and mortgage were as
they were when they left the hands of Crockett Ragsdale, it
had a right to read them in evidence without proof of the
genuineness of the indorsement.

If the plaintiff should get so far into the case as to assert
a claim against Clarence Ragsdale growing out of the indorse-
ment, a different principle will be involved.

II.    There was an attempt on the part of the plaintiff
to prove that Clarence Ragsdale, after he was informed of the
mortgage and the unauthorized use of his name in the transac-
tion, ratified it,    However relevant testimony of such fact
might be in rebuttal, if there should be proof on the part of
defendant tending to show title in himself, it was immaterial
as long as plaintiff was claiming only the title of Crockett
Ragsdale.    If the case had reached the point where there was
evidence tending to show title in defendant and plaintiff was
claiming that title also, or claiming in spite of it, then proof
by defendant that his indorsement on the note was not
genuine, and counter proof by plaintiff of the supposed acts
of ratification would come into place.    But the trial had not

reached that stage when the instruction that plaintiff could not recover was given.

III.   It is objected that the petition does not state facts showing either special or general interest in plaintiff in the property.   The plaintiff is not required to, and should not, set out in his petition the evidence of his title.   The petition avers that the plaintiff is the owner and lawfully entitled to the possession of the property and that is sufficient on that point.

It is also objected by respondent that there was no evidence tending to show that he was in possession of the cattle at the commencement of the suit, but that fact is admitted in his answer.   It was error to exclude the chattel mortgage as evidence, and for that reason the judgment of the circuit court is reversed and the cause remanded for re-trial in accordance with the views herein expressed.

All concur.