[Civil No. 2102.   Filed June 6, 1924.]

[226 Pac. 533.]

## LEW C. WOOLERY, Appellant, v. JOHN A. BARKLEY and JOHN H. MOSS, Appellees.

1. REPLEVIN — ALLEGATION OF GENERAL OWNERSHIP IS SUPPORTED BY PROOF OF SPECIAL OWNERSHIP.—Under Civ. Code 1913, paragraph 1604, relating to replevin, allegation of general ownership is supported by proof of special ownership.

2. REPLEVIN—ALLEGATION OF GENERAL OWNERSHIP SUFFICIENT, THOUGH INTEREST IS SPECIAL.—Allegation of general ownership in affidavit in replevin is sufficient, though affiant's interest is special.

3. SALES—AFFIDAVIT OF ABSOLUTE OWNERSHIP IN REPLEVIN PROCEEDINGS HELD NOT TO SHOW RESCISSION OF PREVIOUS SALES CONTRACT.—That the seller of a crop of cotton, holding a chattel mortgage to secure purchase price, in replevin proceedings to recover possession and protect overdue purchase-money notes, alleged absolute ownership in himself rather than special ownership, *held* not to show a repudiation on his part of the contract of sale entitling purchaser to demand a refund of an initial payment and expenses.

---

1. Necessity and sufficiency of allegation as to ownership or right of possession in complaint in replevin suit, see notes in 11 Ann. Cas. 1150; Ann. Cas. 1912A, 333. See, also, 23 R. C. L. 925.

See 34 Cyc. 1469, 1497; 35 Cyc. 606.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Affirmed.

Mr. W. T. Sprowls and Mr. D. L. Cunningham, for Appellant.

Mr. George P. Stovall, and Mr. Thomas W. Nealon, for Appellees.

ROSS, J.—Appellant Woolery and John H. Moss, on July 30, 1920, bought of defendant Barkley an eighty-acre crop of growing cotton for the consideration of $12,000, $5,000 of which was paid in cash and balance in notes. Of the cash payment, $2,500 was paid by Moss and $2,500 by Woolery. The money used by Woolery to make this first payment was borrowed from Moss on his note secured by a chattel mortgage upon his undivided one-half interest in said cotton crop. The balance of $7,000 was paid with Moss' promissory note for $2,000 and Woolery's promissory note for $5,000, bearing interest at 8 per cent per annum, payable December 15, 1920.

To secure the payment of the notes, each of the makers executed a chattel mortgage upon his interest in cotton crop. The interest of the buyers in the cotton was equal, although Woolery paid and agreed to pay $7,000 of the consideration, while Moss paid and agreed to pay $5,000. Each was to have an undivided one-half of the cotton grown, and each mortgaged his half interest to secure the balance represented by his promissory note. At the time the trade was made and as a part thereof, all parties signed an agreement to the effect that payment of notes should be made from the sale of cotton crop at the time said cotton, or any part of it, was ginned; the proceeds of sale to be credited to Woolery and Moss equally, and after both notes were paid the gin receipts to go one-half to each of them. This

agreement also provided that Barkley should furnish irrigation water for the crop season and Woolery and Moss were to raise, pick and care for cotton at their own expense.

In December, 1920, after the due date of notes, they not having been paid, Barkley instituted an action in replevin to gain the possession of the cotton that had been picked, alleging in his complaint that he was the owner and entitled to the possession thereof. By this means Barkley obtained possession of all the picked cotton, and with Moss, with whom he had composed his differences, entered into the possession of the unpicked cotton and together later picked it. In due course Woolery filed an answer in the replevin suit denying that Barkley was the owner and entitled to the possession of cotton, and alleging that on and prior to the sixteenth day of December he was the owner and entitled to the possession thereof; alleged that his undivided one-half interest in cotton was of the reasonable value of $8,000; and prayed judgment for that amount or the return of the property.

Woolery, treating Barkley's act in replevying cotton as tantamount to a recission of the sale, in February, 1921, without waiting the disposition of the replevin suit, instituted the present action asking in his complaint a return of the $2,500 cash he had paid Barkley, for his expenditures in cultivating, picking, storing, and hauling cotton estimated at $2,200, and for cancellation of the $5,000 promissory note, if held by defendant Barkley, or judgment for that amount if assigned before due.

After pleading another suit pending between the same parties concerning the same subject matter and interposing several special and general demurrers, defendant Barkley answered that he had replevied the cotton from Woolery under and by virtue of the terms of his chattel mortgage, and for the purpose of protecting his lien thereon. This chattel mortgage

is made a part of plaintiff's complaint by reference to the records of the county recorder, and is set out in *haec verba* in defendant's answer. One of the conditions of said chattel mortgage is as follows:

"That said party of the second part (Barkley) or his assigns shall and may at all times enter in the premises to view the same, or to take any measure necessary for the protection of said crop or his interest therein, and that upon harvesting thereof, —— shall be entitled to the immediate possession of the same, and may haul and store the same at the expense of the said party of the first part and does, for the purpose aforesaid, make, constitute and appoint the said party of the second part, and his assigns, his true and lawful attorney irrevocable, with full power to enter upon said premises and take possession of said crop, and take care of and protect the same, in case of any default on part of the covenants herein contained; and he does further authorize ——, or his assigns, to take possession of said crop when harvested, to haul, store and insure the same, to sell and dispose of the same or any part thereof, at such time or times, and for such sum or sums of money, as he may deem proper and for the best advantage of all concerned, and out of the proceeds of said sale, first to retain the costs and charges thereof, and any and all expenses by the party of the second part incurred in the care and protection, harvesting, hauling, insuring or storing the same and commission for selling the same."

It is unquestioned that at the time Barkley replevied the cotton there had been picked some 80,000 pounds of seed cotton and five bales had been ginned, and that Woolery refused to deliver such cotton to Barkley and also refused to pay the $5,000 note. It is also made to appear by the pleadings and by the testimony that Barkley was holding at the time of trial the undivided one-half interest of Woolery in said cotton, subject to the payment of said $5,000 note, interest, costs, and expenses to which he had been put.

The case was tried to the court with a jury, and a verdict in favor of defendant Barkley resulted. The plaintiff Woolery being dissatisfied has appealed from the judgment of the court, assigning numerous errors. These assignments are based principally upon the instructions given and instructions refused. From the conclusion that we have come to, we do not deem it necessary to enter into a discussion of such assignments. It seems to us that the terms of the written instruments evidencing the contract of the parties, and the admitted facts, are such that the questions involved are questions of law, and that whatever errors might have been committed by the court in giving or refusing instructions in the course of the trial, the final determination of the case was correct.

The proceeding in replevin affords the sole excuse for this action. The plaintiff in his complaint bases his right of action, not upon the fact that defendant replevied the cotton, but upon the fact that in his affidavit of replevin he stated he was the owner of the cotton and entitled to its possession by reason thereof. It is contended that because defendant in that proceeding claimed general ownership instead of the special interest of a mortgagee, it should be presumed that he did so for the purpose of rescinding the sale, and that his taking possession was not in pursuance of the right to do so given him under the mortgage, but as the absolute owner. Both parties treated the affidavit as sufficient for the purposes for which it was made. The question is: Did the making of the affidavit of general ownership have the effect of waiving defendant's chattel mortgage lien?

Many of the courts have held that an affidavit of general ownership is supported by proof of a special ownership, and that is so under statutes like our paragraph 1604, Civil Code 1913. And where that is the rule it would be not only inconsistent but a trap to catch the unwary to hold such an affidavit was a

renunciation of the chattel mortgage lien. Some of the cases holding that an affidavit of general ownership is sufficient, where as a matter of fact the interest in the subject matter is special, are as follows: *Schmidt* v. *First Nat. Bank,* 10 Colo. App. 261, 50 Pac. 733; *Crocker* v. *Burns,* 13 Colo. App. 54, 56 Pac. 199; *Kimball* v. *Redfield,* 33 Or. 292, 54 Pac. 216; *Briedwell* v. *Henderson,* 99 Or. 506, 195 Pac. 575; *Reinstein* v. *Roberts,* 34 Or. 87, 75 Am. St. Rep. 564, 55 Pac. 90; *Duggan* v. *Wright,* 157 Mass. 228, 32 N. E. 159; *Miller* v. *Adamson,* 45 Minn. 99, 47 N. W. 452; *First Nat. Bank* v. *Ragsdale,* 158 Mo. 668, 81 Am. St. Rep. 332, 59 S. W. 987.

Under the terms of the chattel mortgage defendant was specifically given the right to take and hold possession of the cotton as it was picked, and it is not probable he would surrender this certain contract right by a claim of absolute ownership when a special ownership could just as easily have been set out. In view of the rule permitting one having a special property in the thing to state it in his affidavit of replevin as general ownership, it must be assumed that it was done in the present case without any thought of waiving the mortgage lien, but in aid of the right to take possession of the cotton as it was picked and in accordance with the agreement in the mortgage giving defendant that right.

The plaintiff's deduction as to the effect of the affidavit of ownership is at war with the conclusion of the text-writers. Cobbey on Replevin, section 533, p. 284, says:

"The term 'owner,' as used in the replevin statutes, does not mean absolute and unqualified title, but means a right to possession. Any interest coupled with a right of immediate possession constitutes ownership under these statutes. . . . But proof of absolute ownership is not necessary to support such an allegation. The allegation of ownership does not

mean absolute title; proof of an interest or right to possession is sufficient.''

Since the plaintiff alleged no other act of rescission or conversion than the replevin proceeding by which defendant gained possession of cotton, and since his mortgage expressly and explicitly gave defendant the right to do what was done, it follows there was no question for the jury to pass upon, and any errors committed in giving or refusing instructions are immaterial.

It is claimed by plaintiff that although his note on its face was past-due when the cotton was replevied, as between him and defendant under their agreement that it should be paid as cotton was sold, and none having been sold the note was not in fact due at that time. We think it makes little or no difference whether the note was due or not, since the mortgage gave the defendant a right to the possession of the cotton as it was picked. The replevin suit was not brought for the purpose of collecting the note, but for the purpose of preserving the security and in pursuance to the agreement in the chattel mortgage that the seller might take possession of the cotton as soon as it had been picked.

Defendant Barkley had contracted to furnish at his expense water to irrigate the cotton to its maturity. In the course of the trial plaintiff introduced evidence to the effect that Barkley had failed to supply the needed water and that the cotton crop had suffered by reason thereof. If defendant Barkley did in fact breach his contract in that regard, it was not made an issue in the pleadings. As heretofore indicated, the plaintiff's right of action is based solely upon the contention that because the affidavit in replevin claimed general ownership in the property defendant should be held to have rescinded the sale and to have obligated himself in law to restore the plain-

tiff to the position he occupied before the sale. As we have seen, this position is not tenable.

It seems to us that the judgment in this case is right, and probably should have been entered upon the pleadings, instead of after trial before a jury.

The judgment is affirmed.

McALISTER, C. J., and LYMAN, J., concur.