## MORGAN v. STANTON AUTO CO. et al.

No. 19065.   Opinion Filed March 11, 1930.

Bond & Bond, for plaintiff in error.

Sullivan & Rice, for defendants in error.

EAGLETON, C. G. S. Blankenship, on October 10, 1925, mortgaged the automobile involved in this cause to Marietta Motor Company, which company assigned the mortgage to the National Bond & Investment Company. The mortgage was filed in the office of the county clerk of Love county, Okla., the county in which the mortgage was executed, and in which the automobile was then located. The automobile was taken to Marlow, Stephens county, Okla., where it remained, and on the 29th or 30th day of November, 1925, less than 120 days after the mortgage was executed and filed, the automobile was sold to R. H. Morgan, plaintiff below, the plaintiff in error in this court, for a cash consideration. The mortgage was not refiled in Stephens county. Mr. Morgan had no actual notice of the previous recorded mortgage. Thereafter, and more than 120 days subsequent to the execution of the mortgage, and more than 120 days subsequent to the filing of the mortgage, and in the early part of April, 1926, the National Bond & Investment Company, through its agent, took possession of the automobile for the purpose of foreclosing its claimed mortgage. Mr. Morgan brought replevin action, and, having been unsuccessful in the lower court, he relies upon three propositions of law to reverse this cause: First, the failure of the National Bond & Investment Company to file its mortgage in Stephens county, within 120 days after the automobile was moved permanently to Stephens county, caused the lien on the automobile to cease to exist. Second, the National Bond & Investment Company improperly took possession of the automobile. Third, the manner of taking possession of the car constituted conversion of the automobile by the National Bond & Investment Company, and thereby forfeited its lien, if any it then had.

The statute which provides for the refiling of a mortgage when the property has been moved to a new county is section 7651, C. O. S. 1921. It reads:

"The filing of a mortgage of personal property in conformity to the provisions of this article, operates as notice thereof to all subsequent purchasers and incumbrancers of so much of said property as is at the time mentioned in the preceding section located in the county or counties wherein such mortgage or authenticated copy thereof is filed; provided, that when a mortgaged chattel is moved into this state, or from one county to another, any previous filing of the mortgage shall not operate as notice as against subsequent creditors, purchasers, mortgagees or incumbrancers for a longer period than 120 days after such removal, but such mortgage must be refiled in the county to which the chattel is removed and in which it is permanently located."

The mortgage here involved was properly filed in Love county. Thereafter, the auto-

mobile was removed to Stephens county. There this action arose. A chattel mortgage is good as between the parties to it without filing. Strahorn-Hutton-Evans Commission Co. v. Florer & Bannerman, 7 Okla. 499, 54 Pac. 710; Frick Co. v. Oats, 20 Okla. 473, 94 Pac. 682; Jarecki Manufacturing Co. v. Fleming, 123 Okla. 147, 252 Pac. 17.

The purpose of the filing statute is to give notice constructive or notice actual to a prospective purchaser or incumbrancer of the property mortgaged. Without the filing statute for chattel mortgages, one would be compelled to take a mortgage on or take title to personal property without protection against those holding prior liens on the property. If a person knows about a prior lien held against property he proposes to buy, or on which he proposes to take a mortgage, the filing statute does not aid him. If he does not know of the pre-existing lien on the property, the state has made provision whereby he may investigate and ascertain definitely if a previous mortgage does exist which will be superior to his title or lien. The primary purpose of the law is to afford the prospective incumbrancer or purchaser a means of protecting himself. One who buys or accepts a mortgage on personal property without first having taken the precaution of examining the chattel mortgage filing records does so at his peril. Oklahoma early passed upon this law, giving its effect as placing one who acquires an interest in the property with constructive notice in the same position as one who has actual knowledge of the prior incumbrance. Strahorn-Hutton-Evans Commission Co. v. Florer & Bannerman, supra.

"It is a well-settled principle of law that notice is the equivalent of knowledge, and may be divided into two classes, constructive and actual. Constructive notice is that imparted by the record, and is a matter of statute. Actual notice exists when knowledge is actually brought home to the party to be affected thereby. It also includes implied notice, which is notice to the authorized agent of the party sought to be bound by the notice. The filing of a chattel mortgage for record, and the recording thereof, are but constructive notice of its existence; and, if the party had notice of its existence otherwise than by its record, the full purpose of the recording act is attained. * * *

"As between the mortgagor and mortgagee, the mortgage is valid, although not recorded; and we do not think that one who takes a subsequent mortgage upon property which he knows is embraced within the prior unrecorded mortgage of another can be permitted to assail such prior mortgage because of the mere failure to record it. * * *

" 'The mere fact, therefore, that respondent's mortgage was not verified or recorded will not render it invalid as to appellant unless he purchased the property for value, and in good faith; and no one can become a purchaser or an incumbrancer of property in good faith if he have notice of a pre-existing mortgage, although such mortgage may not be recorded or verified in accordance with the statute.' "

The effect of the filing statute is not only to protect against subsequent purchasers and mortgagees in the county in which the mortgage is made and filed, but, as well, subsequent purchasers and mortgagees in counties to which the property has been moved. For a period of 120 days after the property has been moved into a new county, the mortgage filed is notice constructive of the lien itself. However, should the mortgagee fail to refile his mortgage, or a certified copy thereof, in the new county, within that period, the mortgage ceases to exist so far as an incumbrancer or purchaser in good faith is concerned. Nor is it necessary that the mortgagee have knowledge of the removal of the property to the new county. Snodgrass v. J. I. Case Threshing Machine Co., 70 Okla. 303, 174 Pac. 515; First National Bank of Vinita v. Guess, 72 Okla. 125, 179 Pac. 29; Arnold v. Wittie, 99 Okla. 236, 227 Pac. 132; Continental Supply Co. v. Badgett, 114 Okla. 1, 242 Pac. 209; Jarecki Manufacturing Co. v. Fleming, 123 Okla. 147, 252 Pac. 17.

Mr. Morgan in this cause cannot be said to be an innocent purchaser or a purchaser in good faith. This court has previously so held in a closely analogous case arising where the second mortgage was taken before the life of the notice of the filed mortgage had terminated and no affidavit of nonpayment was filed to perpetuate the notice. First State Bank of Ardmore v. King & McCants, 37 Okla. 744, 133 Pac. 30.

"When plaintiff took his mortgage, interveners' mortgage was a valid subsisting lien, and being of record in compliance with the registration laws was notice to all persons, including plaintiff. This is conceded by plaintiff, but the contention is made that, with the failure of interpleaders to file the second renewal affidavit when required, that thereafter their mortgage was void as to plaintiff; we do not think so. Plaintiff took with notice and in hostility to the first mortgage, and under the law of his contract he never became a subsequent incumbrancer 'in good faith for value' as against the first mortgage.

"Almost this identical question is presented and so decided in Howard v. First Nat. Bank, 44 Kan. 549, 24 Pac. 983, 10 L. R. A.

537, under practically the same statute. In that case the second mortgage was taken while the first was clearly alive under the Kansas statute, but when the matter got into suit the contention was made that an attempted renewal affidavit was void, and that therefore the first mortgage had expired and let the second one in to the exclusion of the first. After stating this contention the court says:

" 'We don't care to discuss the sufficiency of the affidavit, as we believe with the trial judge that under the circumstances of this case the renewal affidavit is not a material matter. The affidavit could only be material in case there were subsequent purchasers, or mortgagees in good faith. * * *'

" 'Because the language of the statute (paragraph 3905, Gen. St. 1889), "every mortgage so filed shall be void as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith, after the expiration of one year after the filing thereof, unless, within 30 days next preceding the expiration of the term of one year from such filing, and each year thereafter, the mortgagee, his agent or attorney, shall make an affidavit," etc., does not include intermediate purchasers or mortgagees; that is, purchasers or mortgagees who purchased, or, whose mortgages were taken, intermediate the time of filing of such mortgage and the end of the year during which it remains in force without the renewal affidavit, but means only purchasers and mortgagees who purchased or took their mortgages, after the expiration of the year, and after it became necessary to file a renewal affidavit to continue the mortgage in force. This construction is based upon reason. He who purchases after the year has expired during which a mortgage remains in force has a right, in the absence of the renewal affidavit, to suppose the mortgage has been paid, even though not released on the record. But he who purchases before the year expires takes with notice of the mortgage and the rights of the mortgagee under the same. If, therefore, the mortgagee fails at the end of the year and within the time prescribed by the statute to file his renewal affidavit, the purchaser is not affected adversely by the failure to file the affidavit, though the lien of the mortgage as to him remain intact. His rights are unaffected. They remain the same as before. He has invested nothing upon the strength of the failure of the mortgagee to file his renewal affidavit. At the time he purchased he knew of the incumbrance. This knowledge continues, and he may not be said to be a purchaser in good faith. The same reasoning applies to intermediate mortgagees. But we are not left to a decision of this question solely upon reason or principle. The great weight of authority sustains this view.' "

This court early made a clear distinction between "creditors of the mortgagor" and "subsequent purchasers and incumbrancers of the property in good faith for value." (Sections 7650 and 7651, C. O. S. 1921.)

Strahorn-Hutton-Evans Commission Co. v. Florer & Bannerman, supra.

"There is a clear distinction between creditors and subsequent purchasers in good faith, for value, under the provisions of our statute. The latter cannot acquire any rights superior to an unrecorded chattel mortgage, of which they have actual notice or knowledge; while the former are not affected by such knowledge or notice. In other words, if a failing debtor gives a mortgage to one creditor, which is not properly executed or recorded, a subsequent purchaser can take no advantage of such defect, if he knew of the mortgage. On the contrary, a creditor can take advantage of such defect notwithstanding he had actual or constructive notice of the mortgage. The defective execution of a mortgage, such as the failure to be witnessed in the presence of two witnesses, and attested by them, does not render the mortgage absolutely void. It is valid between the parties, and as against a subsequent purchaser or incumbrancer who has actual notice or knowledge of such mortgage. Actual notice is as binding upon a subsequent purchaser as is constructive notice which is imparted by the proper execution and filing of the instrument.

"The question, then, arises, can there be a subsequent purchaser of property in good faith, and for value, who has actual notice and knowledge of the mortgage, under the provisions of our statute? We think not. That principle, as well as the great weight of authorities in this country, sustains the doctrine that it is competent to show that a subsequent purchaser or incumbrancer has notice or knowledge of such mortgage, and that, if he had such notice or knowledge of such mortgage, he cannot be a bona fide purchaser within the meaning of the statute."

Other cases have been called to the attention of this court. Each of them is distinguishable from the instant case. In Cornelius v. Bolling, 18 Okla. 469, 90 Pac. 874, the holder of an unrecorded mortgage took possession of mortgaged property to foreclose his lien. Prior to his sale thereof, the mortgagor went into bankruptcy. The mortgagee was not allowed to retain his lien for "his taking possession of the property under the mortgage gave him no right as against the creditors, in view of the fact that bankruptcy proceedings were commenced in less than four months time after he took possession. * * *"

In Greenville National Bank v. Evans-Snyder-Buel Co., 9 Okla. 353, 60 Pac. 249,

the property was in the new county more than 120 days before the rights under the subsequent lien matured. The same is true in Snodgrass v. J. I. Case Threshing Machine Co., supra, First National Bank of Vinita v. Guess, supra, and Continental Gin Co. v. Sims, 103 Okla. 191, 229 Pac. 818.

In Arnold v. Wittie, supra, a mortgage was taken on personal property within 120 days of the date on which it was brought into the county. The property was subject to a prior recorded mortgage. After the expiration of 120 days, the mortgagee, who had taken his mortgage in the county, went into peaceful possession of the property for the purpose of foreclosing his lien without knowledge of the mortgage made elsewhere, which mortgage had never been filed in the county. The holder of the mortgage first made brought replevin against the holder of the mortgage made in the county, and the court said:

"We think that was a rightful possession and not in violation of any of the rights of the plaintiffs, and being in the rightful possession as a mortgagee without notice, its right of possession was superior to that of the plaintiffs."

The taking possession subsequent to the expiration of the period of notice brought the mortgagee within the protection of the statute. To the same effect is, Frick Co. v. Oats, 20 Okla. 473, 94 Pac. 682.

A case from the Supreme Court of Washington, Muller v. Bardshar, 205 Pac. 845, is relied upon by plaintiff in error to establish the interpretation that the mortgage, as to others than the parties to it, ceases to exist when the property has been in a new county 120 days and the mortgage has not been refiled therein. But that case is founded upon a statute which provides that on failure to file the chattel mortgage in the new county within the prescribed time, "it is, except as between the parties to the mortgage, exempted from the operation thereof. * * *" Our statute has no such provision, and our court in interpreting our statute in Jarecki Manufacturing Co. v. Fleming, supra, held contra. The facts of the Jarecki Case were that Fleming took a mortgage from Hays on a string of drilling tools in Okmulgee county and filed it in that county. The tools were moved to McIntosh county, and remained there for more than 120 days, during which period Jarecki Manufacturing Company furnished materials for the repair and operation of the tools and made claim to a materialman's lien. The lien was foreclosed against the owner of the tools, but Fleming, the holder of the mortgage which had not been filed in McIntosh county, was not made party to the suit. Jarecki Manufacturing Company bought the tools at the sheriff's sale. In suit by Fleming against Jarecki Manufacturing Company to obtain possession of the tools, Fleming was allowed to prove that the lien of the Jarecki Manufacturing Company was not a proper lien, and prevailed in the cause. This court said:

"* * * Therefore, the lien of the defendant company for material furnished did not attach to the property in question, and the defendant was not entitled to the possession of the property as against the mortgagee, Fleming, who retained a lien, as between the mortgagor, Hays, and himself."

Farmers' State Bank of Wheatland v. North Okla. Bank, 104 Okla. 248, 230 Pac. 914, is not of assistance in that it was determined that the property had not been located in the new county for a period of 120 days.

It will thus be seen that, under the law in this state, an unrecorded chattel mortgage is good as between the parties; that the filing of a mortgage in the county in which the property is located at the time the mortgage is taken, which property is thereafter moved to a new county, is effective notice to purchasers and incumbrancers for a period of 120 days after the property has been moved into the new county; that until the 120-day notice period has passed, no person can be an innocent purchaser or incumbrancer "in good faith." So the plaintiff purchased the car involved in this suit subject to the mortgage lien of the National Bond & Investment Company, and, at the time the National Bond & Investment Company took possession of this car, it was rightfully entitled to possession to foreclose its lien.

We now come to the second and third arguments of the plaintiff in error, which can be disposed of together. The mortgage held by the National Bond & Investment Company provided, in case of default in any of its conditions, that "the mortgagee shall thereupon have the right to take possession of said property, and for that purpose may pursue the same wherever it may be found, and may enter any of the premises of the said mortgagor, with or without force or process of law, and search for the same, and, if found, take possession of, remove, and sell said property. * * *"

This court has frequently stated and restated the rules as to the rights of the mortgagee on default made under the terms of

the mortgage. In Wilson Motor Co. v. Dunn, 129 Okla. 211, 264 Pac. 194, this court held:

"Although a chattel mortgage provides that the mortgagee, under certain conditions, may take possession of the mortgaged property, yet neither the mortgagee, its assignee, nor their agents, have the right to take possession of the property by force, threats, violence, or stealth, and without the consent of the mortgagor. The law will not permit a mortgagee to commit or threaten a breach of the peace, and then to justify the conduct by a trial of the rights of property."

In that case, the agent, "by force and violence, broke open the building containing the car and unlawfully stole and carried away the same and converted the same to plaintiff's and intervener's own use and benefit," and the court quoted further in the opinion from Jones on Chattel Mortgages (4th Ed.) p. 705, "A man has no right to resort to robbery to collect his claim."

To the same effect as the Wilson Motor Co. Case is Ray v. Navarre, 47 Okla. 438, 147 Pac. 1019. Stating the proposition in another way, this court, in Firebaugh v. Gunther, 106 Okla. 131, 233 Pac. 490, said:

"The only restrictions upon the mode by which the mortgagee secures possession of the mortgaged property, after breach of condition, are that he must act in an orderly manner and without creating a breach of the peace, and must not intimidate by securing the aid of the officer, who pretends to act colore officii."

To the same effect is Waggoner v. Koon, 67 Okla. 25, 168 Pac. 218, in which last-cited case the court, in its opinion, said:

"It is probably true that the defendant never expressly assented to the taking of the property, but this, we think, does not make the taking tortious. The only restrictions upon the mode by which the mortgagee secures possession of the mortgaged property, after breach of condition, is that he must act in an orderly manner and without creating a breach of the peace, and must not intimidate by securing the aid of an officer who pretends to act colore officii. Ray v. Navarre, 47 Okla. 438, 147 Pac. 1019."

In J. I. Case Threshing Machine Co. v. Barney, 54 Okla. 686, 154 Pac. 674, the question was passed upon as to whether or not the taking of possession of personal property under chattel mortgage was conversion when the taking was over the objection of the mortgagor. The court said:

"The mortgage contained the clause giving the mortgagee the right, upon default in the payment of any of the notes or part thereof, to take possession of the mortgaged property and sell the same. We think the taking possession under the circumstances related by the witnesses was not a conversion. 7 Cyc. 78-80," etc.

The syllabus of that case stated:

"Where a chattel mortgage contains a clause giving the mortgagee the right, upon default by the mortgagor in making payments provided for, to take possession of the property and sell it, upon such default, the mortgagee has the right to take peaceable possession, and although he has not the right to use force in taking possession, yet the mere fact that the mortgagor refused to consent to the taking does not constitute 'conversion.'"

The trial court in this cause refused to submit to the jury the evidence of the case, that they might, under proper instructions, pass upon all the questions put in issue by the pleadings and the evidence. Was the manner of taking possession of the automobile by the National Bond & Investment Company legal? Was the manner of taking possession of the automobile such as to constitute conversion? The jury was not allowed to consider these questions.

In refusing to submit these questions to the jury, the court did what amounted to sustaining a demurrer to the evidence of the plaintiff. Looking to the evidence of the plaintiff with liberality, as it must be considered on demurrer, it is sufficient to withstand that attack, and requires that it be submitted to the jury to be passed upon with the further light furnished by the controverting and explanatory evidence introduced by the defendant.

The cause is therefore reversed for further proceedings in accord with this opinion.

BENNETT, HALL, HERR, LEACH, DIFFENDAFFER, and TEEHEE, Commissioners, concur. FOSTER, Commissioner, dissents.

By the Court: It is so ordered.