The SECURITY BANK & TRUST COMPANY, Plaintiff in Error,

v.

The STATE of Oklahoma ex rel. L. O. THOMAS, County Attorney of Craig County, Oklahoma, Defendants in Error.

No. 37126.

Supreme Court of Oklahoma.

May 22, 1956.

William W. Bailey, Vinita, for plaintiff in error.

L. O. Thomas, Vinita, for defendant in error.

BLACKBIRD, Justice.

The action out of which this appeal arises was instituted by the State on relation of the County Attorney of Craig County, Oklahoma, for the purpose of having forfeited, under the provisions of Tit. 37 O.S.1951 § 111, a 1955 Plymouth automobile owned by John Karr, alleged to have been used to transport intoxicating liquor in said county. The Security Bank & Trust Company, Miami, Oklahoma, intervened, claiming a valid and subsisting lien on the auto by reason of a chattel mortgage dated February 10, 1955, and recorded four days later, whereby Karr, the auto's pur-

chaser and owner, mortgaged it to said bank. To the bank's petition in intervention was attached a purported copy of said mortgage.

The trial before the county judge was limited to the sole issue of the intervening bank's rights in the auto by the parties' stipulation of facts tending to show it had been used in illegal liquor transportation, as alleged by the State, and was subject to forfeiture, unless the intervening bank had a valid lien thereon.

Thereafter, on behalf of the bank, a promissory note dated February 10, 1955, made payable to, and endorsed by, the Miami Motor Company in the amount of $1,569.50, describing the collateral therefor as "1955 Ply.—Miami Motor Co.", and bearing the purported signature of John Karr, was introduced in evidence. Albert Johnson, Assistant Cashier of the bank, testified that the bank was then the holder of the note and a mortgage on a 1955 Plymouth; that Ed Hall, operator of the Miami Motor Company, had brought said instruments to the bank and that he (Johnson) had purchased them for the bank. He further testified that, although the note and mortgage were made at the Miami Motor Company and John Karr did not then come to the bank and that he did not even know him, the witnessing (of said "papers") was done at the bank. At the close of Johnson's testimony, the bank initially rested its case, but, when the State orally demurred to its evidence on the ground of its insufficiency to establish the validity of the bank's claimed mortgage on the auto, the bank elicited from John Karr that his signatures on said instruments were genuine, that they were executed at the Motor Company in the presence of its manager, and that Dorothy L. Peck, whose name appears on said mortgage as one of the witnesses to its execution, was not there; and that he never went to the bank until he paid the first installment on said note. His testimony further revealed that he knew the note was made out to the Motor Company, and though indicating that he paid no attention as to whom the mortgage was made out to, showed that he assumed or "supposed" the papers would go, or be sold, to the Bank. When, at the close of the testimony, the State objected to the introduction in evidence of the chattel mortgage, the court sustained said objection. The State then interposed a demurrer to the evidence as a whole, but no ruling was then made thereon. The State then introduced the testimony of three law enforcement officers contemplated to show that, if the bank's assistant cashier had made inquiry before buying the note and mortgage he would have learned that, although John Karr had never been arrested for handling or transporting liquor, he had a general reputation in the community for being in that business. Mr. Johnson's testimony had been to the effect that he had never heard of Mr. Karr, nor had any knowledge of his hauling liquor and that neither he nor the Bank had made any effort to ascertain whether or not he was, ever had been, or would be, so engaged. At the close of all of the evidence, the court sustained the State's demurrer and entered judgment, finding that the bank had "failed to establish the existence of a valid and subsisting lien," and declaring the automobile forfeited to the State.

For reversal, the bank argues that the trial court's judgment should have been in its favor; and that said court not only erred in sustaining the State's demurrer, but also in refusing to allow introduction in evidence of its chattel mortgage. In speculating as to some possible basis for the judgment, the Bank's counsel points to the county attorney's argument in the trial court that the mortgage was improperly attested, and to the variance between the name of the note's payee and the name of the mortgagee on the mortgage which it claims was given to secure said note's payment.

With reference to the first point alluded to, the fact that either or neither of the persons signing the chattel mortgage as witnesses, actually witnessed its execution, did not affect its ability to create a valid lien on the automobile. A chattel mortgage does that, without being witnessed. Lankford v. First Nat. Bank, 75 Okl. 159, 183 P. 56. The witnessing is merely to assist in verifying its execution and to

enable its filing. The primary purpose of its filing is merely to give constructive notice thereof. Morgan v. Stanton Auto Co., 142 Okl. 116, 285 P. 962. While it is true that, under our statutes, the lien created by an unfiled chattel mortgage is void as against the mortgagor's creditors and the subsequent purchasers and encumbrancers for value of the mortaged property, the State, in a forfeiture case like the present one, is neither of these. Commercial Credit Co. v. State, 160 Okl. 201, 16 P.2d 879. It was therefore immaterial to the existence of the Bank's claimed mortgage lien that either, or neither, of the persons, whose names appear on the mortgage as witnesses, actually saw it executed.

■ As to the fact that the chattel mortgage named as mortgagee, the bank, to whom John Karr, the auto's purchaser, owed no debt at the time of the note's and mortgage's execution, it is true that a debt, due, or to become due, is an essential feature of a valid chattel mortgage. 10 Am.Jur., "Chattel Mortgages", sec. 39. And, it has been said that a chattel mortgage made to a mortgagee, to whom the mortgagor owes no debt, has no valid basis. See Note 20, Ibid., citing First State Bank of Mexico v. Ragsdale, 158 Mo. 668, 59 S.W. 987, 81 Am.St.Rep. 332. But here, the evidence showed, without contradiction, that by reason of Miami Motor Company's assignment and sale of Karr's note to the bank, Karr, the auto's owner and mortgagor, owed the bank the debt evidenced by the note. And, we think the undisputed testimony sufficiently identified said debt as the one whose payment the Bank's mortgage was given to secure, to have warranted admission of the mortgage in evidence. In this connection, see Williams v. Hilton, 35 Me. 547; Nazro v. Ware, 38 Minn. 443, 38 N.W. 359, 361; Tousley v. Tousley, 5 Ohio St. 78; Bourne v. Littlefield, 29 Me. 302; Melvin v. Fellows, 33 N.H. 401, and other cases cited in the footnotes in Jones On Mortgages (8th Ed.), Vol. 1, sec. 434, p. 556 (6th Ed.), secs. 70 and 71; 10 Am.Jur., "Chattel Mortgages", sec. 70, and 14 C.J.S., Chattel Mortgages, § 75. Neither Karr, nor anyone else, denied that he owed the debt to the bank, or that same was a just and valid obligation. If the mortgage was given to secure its payment, as the parol evidence indicates it was, then the bank should have been allowed to introduce such documentary proof of its mortgage lien thereon, and, to accord with justice, the auto's forfeiture should have been denied or the bank's lien and/or mortgage appropriately recognized, preserved, or left intact.

■ We do not think the record bears out the State's contention, in its Proposition No. 1, that the bank never offered the mortgage in evidence. The record distinctly shows that, after his signature thereon was verified by Karr, the attorney for the bank requested a ruling on the instrument's admission. Under its Proposition No. 2, the State's further contention is that because the record does not reveal whether or not the document the bank presented as evidencing its mortgage lien from Karr was certified to by the county clerk who has custody of the public record of chattel mortgages, it was not entitled to admission in evidence under Tit. 12 O.S.1951 § 486, authorizing such admission of certified copies. The short answer to this contention is that its equivocal or uncertain application to the present case is demonstrated by the county attorney himself when he concedes, after quoting said statute, that, as far as the record shows, the instrument referred to may have been the original, rather than just a copy, of the chattel mortgage.

■ Nor can the trial court's conclusion that the evidence failed to establish the existence of a valid and subsisting lien on the auto in favor of the bank stand on the evidence concerning Karr's reputation for being a liquor hauler or dealer. The evidence conclusively showed that the bank, through its assistant cashier, who was the only one of its agents, officers or employees who testified, knew nothing, and/or had no notice or knowledge of anything which might have lead anyone to believe that Karr was engaged, or was using, or would use, the auto, in such illegal business or undertaking. Under its Proposition No. 3, the State contends that the burden was on the bank, in order to stay or prevent forfeiture of the auto, to show that it had investigated Karr's business and reputation. We know

of no such burden upon a mortgagee intervener in a state, as distinguished from a federal, forfeiture case. See Tit. 37 O.S. 1951 § 50.8; General Motors Acceptance Corp. v. U. S., 10 Cir., 201 F.2d 732; Annotations, 124 A.L.R. 288 and 82 A.L.R. 607. The cited statute makes the priority of the mortgagee's lien dependent upon the lien's having been created "without knowledge" that the mortgaged vehicle "was to be used for illegal purposes"; but it, in itself, does not require the mortgagee to gain knowledge by inquiry or investigation. The cases of Crater or Wallace, 193 Okl. 32, 140 P.2d 1018 and Marmaduke v. McDonald, 175 Okl. 67, 51 P.2d 484, cited by the county attorney, are not in point and have no application whatsoever to this case. Peavler v. State, 79 Okl. 308, 193 P. 623, which he also cites, is readily distinguishable from this case. There, because of the circumstances from which knowledge that Pogue was using his taxi to haul liquor was imputable to Peavler, this court held that the trial court's judgment, which included a finding that Peavler had such knowledge, was not clearly against the weight of the evidence. Here, the circumstantial evidence is insufficient to impute to the bank such knowledge about Karr. Nor was the bank shown to have notice of any fact that would have put it upon inquiry concerning Karr's use of the auto. Nor did the State show any valid basis for a conclusion that the Bank was at fault in not making such inquiry under the rule in such cases. See 1942 Chevrolet Automobile Motor No. BA 193397 v. State ex rel. Cline, 192 Okl. 555, 136 P.2d 395. It is established policy in this jurisdiction to protect the rights and interests of *innocent* parties in property seized in liquor law violations. Odom v. Turner, 204 Okl. 370, 230 P.2d 487, 489. Notice also 30 Am.Jur., "Intoxicating Liquors", secs. 381, 564.

The judgment of the trial court is reversed with directions to said court to overrule the State's demurrer.

JOHNSON, C. J., WILLIAMS, V. C. J., and DAVISON, HALLEY, JACKSON and HUNT, JJ., concur.