## CASSITY v. FIRST NAT. BANK in TONKAWA.

No. 19214.   Opinion Filed March 25, 1930.

Rehearing Denied April 29, 1930.

Sam K. Sullivan, Neal A. Sullivan, and R. J. Shive, for plaintiff in error.

W. W. Davis, for defendant in error.

BENNETT, C.  The parties to this lawsuit are here in the reverse order in which they appeared in the trial court.  They will be referred to in the order in which they appeared in said court.

The plaintiff, by appropriate petition, sued defendant for $527.82, the value of 487½ bushels of wheat, sold to defendant by one H. E. Saunders, from whom plaintiff held a chattel mortgage covering same.  The wheat was grown in Noble county, wherein the chattel mortgage was filed for record.  The amount of the note secured by the chattel mortgage was $790, subject to some small credits.  It is further set forth that plaintiff is a banking corporation doing business at Tonkawa, Kay county, Okla., and that defendant operates there a grain elevator, and is engaged in buying and selling grain under the name of Cassity Grain Company. The note and chattel mortgage are dated May 11, 1925, and it is alleged that the mortgagor, Saunders, threshed said wheat and hauled same from Noble county to Tonkawa in Kay county, and there sold same to defendant about June 22, 1925, and that defendant, having constructive notice of plaintiff's mortgage, converted said wheat to plaintiff's damage in the amount demanded.

By appropriate, unverified answer, defendant, after setting up a general denial, admits plaintiff to be a banking corporation, and that defendant operates the elevator as alleged, but alleges it had no knowledge of the chattel mortgage, or the note secured thereby, or that the same was recorded, of which he denies both the constructive and actual knowledge, and further states that if he bought any wheat from H. E. Saunders, it was paid for without any knowledge that plaintiff had any right, title, or claim thereto.

The facts are practically undisputed. The evidence shows that the mortgagor, on or about June 23, 1925, hauled to defendant's elevator the 487½ bushels of wheat, of which he sold to defendant 100 bushels on June

24th and the remainder on the 25th of June, 1925, and received therefor and cashed two checks aggregating the sum herein sued for; that the removal of the wheat from Noble county was without knowledge or consent of the mortgagee.

The chattel mortgage was never filed for record in Kay county. The mortgagee made no investigation until some time in the fall of 1925, and then learned that the wheat had been sold to the defendant. The wheat and the land upon which it was grown were identified.

G. W. Ramer was employed by, and was in charge of, the office of the·defendant at the time the wheat was delivered, and testified that the wheat remained in the elevator sometime after plaintiff had knowledge of the fact that it had been purchased. There was considerable other testimony not necessary to be detailed here, but some of which will be referred to later herein.

Upon the completion of all the testimony, each party, through his counsel, moved for an instructed verdict. Whereupon the court directed the jury to return a verdict for plaintiff, and the same is assigned as error here in this appeal by defendant.

It is defendant's contention that the court erred in instructing the verdict, for two reasons: First, that plaintiff failed to record its mortgage in Kay county within 120 days after the mortgaged property was removed thereto from Noble county, and therefore it never had any lien upon the wheat; and, second, even if plaintiff had recorded its mortgage in Kay county within the statutory time defendant never converted the wheat, that the same was still in defendant's elevator in the storage bin, and that plaintiff never made any demand for possession of the wheat before filing suit, and if demand had been made within four months after purchase by defendant, he would have delivered it to plaintiff.

A complete answer to defendant's first contention may be found in the case of Morgan v. Stanton Auto Co., No. 19065, decided by this court on March 11, 1930, 142 Okla. 116, 285 Pac. 962. The third and fourth paragraphs of the syllabus are:

"One who purchases property which is subject to a mortgage of which he has constructive notice of knowledge takes title in hostility to the prior mortgage and he does not become a subsequent purchaser 'in good faith for value' as against that mortgage by the failure of the mortgagee to refile his mortgage thereafter in the county to which the property has been removed as provided in C. O. S. 1921, section 7651.

"C. O. S. 1921, sections 7650 and 7651, give constructive notice, of a mortgage filed in the county where the mortgage is taken and the property is then located, in a new county to which it is permanently moved for a period of 120 days from the time it reaches the new county. One who purchases or accepts a mortgage thereon during that period does so under constructive notice of the mortgage with all of its intendments."

The court in that opinion says:

"The effect of the filing statute is not only to protect against subsequent purchasers and mortgagees in the county·in which the mortgage is made and filed, but, as well, subsequent purchasers and mortgagees in counties to which the property has been moved. For a period of 120 days after the property has been moved into a new county, the mortgage filed is notice constructive of the lien itself. However, should the mortgagee fail to refile his mortgage or a certified copy thereof in the new county within that period, the mortgage ceased to exist so far as an incumbrancer or purchaser in good faith is concerned. Nor is it necessary that the mortgagee have knowledge of the removal of the property to the new county. Snodgrass v. J. I. Case Threshing Machine Co., 70 Okla. 303, 174 Pac. 515; First National Bank of Vinita v. Guess, 72 Okla. 125, 179 Pac. 29; Arnold v. Wittie, 99 Okla. 236, 227 Pac. 132; Continental Supply Co. v. Badgett, 114 Okla. 1, 242 Pac. 209;. Jarecki Manufacturing Co. v. Fleming, 123 Okla. 147, 252 Pac. 17.

"Mr. Morgan, in this cause, cannot be said to be an innocent purchaser or a purchaser in good faith. This court has previously so held in a closely analogous case arising where the second mortgage was taken before the life of the notice of the filed mortgage had terminated and no affidavit of nonpayment was filed to perpetuate the notice. First State Bank of Ardmore v. King & McCants, 37 Okla. 744, 133 Pac. 30."

The court, in the opinion, refers to a number of cases from this and other jurisdictions in support of the holding, but this question is so fresh in the minds of the court that we deem an extended discussion of little value. It is, we think, sufficient to say that the pertinent facts in the case of Morgan v. Stanton Auto Co., supra, are, on this phase, in all essential particulars, analogous to the facts in the case at bar, and the holding there is determinative of the first question now considered here.

The second group for reversal urged is that the defendant did not convert the wheat and that no demand upon him was made for same. The proof shows that this elevator was conducted for the purpose of storing

wheat off those who did not desire to put the same immediately upon the market, and that such customers of the elevators paid perhaps one cent per month per bushel as storage charge, the elevator taking care of the shrinkage and insurance, and likewise giving to the patrons the privilege of selling their wheat to such elevators at the market price at any time during storage. When this wheat was carried to the defendant for storage, it was ostensibly carried there for just the purposes and upon the conditions named, but it was immediately sold outright for cash by the patron of the elevator to the defendant, who, to all intents and purposes, and as far as might be, become the owner of the wheat. It was some months thereafter before the mortgagee discovered that the wheat had been removed from Noble county, and still later before it was found out that defendant had purchased same from the mortgagor. The mortgagee or his agent or attorney made several trips to the defendant's place of business, first, to ascertain whether or not the wheat were there, and it discovered that the wheat had been sold and the exact number of bushels, and the amount paid therefor by the defendant was ascertained, at which time the pay checks representing the purchase price were shown to the plaintiff or his representative, together with the proper book entries as to date of purchase, grade of wheat, etc. Defendant's claim that no demand was made for the wheat occurs to us to be rather fanciful in the light of defendant's assertion of title by purchase and of his pleadings and proof. It is familiar learning that no demand is necessary against one who, with knowledge, purchases from a wrongdoer (38 Cyc., p. 2036, and cases cited under subheads "f" and "g") ; or, where it appears that defendant claims title adversely to plaintiff, or took the property into possession with notice of plaintiff's rights. 38 Cyc., p. 2035, subheads "c" and "d' and cases cited; see, also, Daggett v. Gray (Cal.) 42 Pac. 568.

"Where defendant denies plaintiff's title, and pleads ownership and right to the possession in himself or another, he cannot defeat recovery on the ground that plaintiff did not allege and prove demand before suit." Rosenau v. Spring (Ore.) 35 Pac. 844.

See, also, Lewis v. Smart, 67 Me. 206; Raper v. Harrison, 37 Kan. 243, 15 Pac. 219.

Nevertheless, Mr. Cassity was asked:

"Q. Do you remember whether I asked you to make an adjustment of the matter? A. No— A. (After objection) There was no demand made for an adjustment, you said you were going to commence suit, you didn't want to get tangled up in two different ways on account of my business, I think if I remember right you told me they was going to sue me to recover that wheat and stated that it would be a friendly suit to test out the rights of it; I said you can call it friendly if you want to, but I don't want to pay out $527 twice, I don't think there is much friendship about that kind of business."

Mr. Ramer, the admitted agent of defendant, testified:

"Q. Well, did he (Mr. Wycoff, plaintiff's cashier) come back again? A. He came back about, Oh, the last of November, or the first of December, sometime. Q. What happened then? A. He said, 'Well, we are going to sue for that wheat, have a friendly suit.' Q. That is all there was to it? A. That is about all there was to it. * * * Q. And he knew that you had purchased the wheat, didn't he? A. Yes, I expect he did."

This, and other evidence in the record, is sufficient to show demand, even, if necessary. It is, of course, not necessary that a demand be made in any particular form or any particular language. Throughout this case it appears that plaintiff was seeking either to get his wheat back or to secure its value from defendant.

It is next contended that the defendant did not convert the wheat, but that he kept it on hand. Of course, the plaintiff had no knowledge of just what the defendant had done with his wheat. It had been bought outright by the defendant with at least constructive knowledge of the chattel mortgage then covering the same. It is true that the defendant said at one point in his testimony that he would have turned over the wheat to the plaintiff if the plaintiff should show that he was legally entitled thereto and had filed his mortgage for record in Kay county within 120 days. This kind of answer was attaching an impossible condition to his willingness to return the wheat, for 120 days had already passed, and the defendant knew it, and his statement also makes it clear that he was relying upon the failure of plaintiff to record his mortgage within the 120 days whereby defendant's title to the wheat was perfected, or, at any rate, making it impossible for plaintiff to enforce his mortgage against the same. Was this a conversion of the wheat? It was certainly buying outright a property which the defendant constructively knew his vendor could not sell, and that the defendant could not therefore acquire. He was taking it over as his own property and was holding it and has always held it as such. His dealing with the prop-

erty has always been in antagonism to the rights of the mortgagee.

Conversion has been defined to be "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." First Nat. Bank of McCloud v. City Nat. Bank of Wellington, 71 Okla. 52, 175 Pac. 253.

"When the mortgagor of personal property, being in possession before default and having the right of possession under the terms of the mortgage, sells the entire property to another, who has notice of the mortgage, either actual or constructive, the purchaser acquires only the interest of the mortgagor, and holds subject to the mortgage; and, in such case, after default, the mortgagee may maintain an action against such purchaser for the wrongful conversion of the property mortgaged, purchased by him." Bank of Commerce v. Gaskill, 44 Okla. 728, 145 Pac. 1131.

In the last named case, the court says:

"An absolute sale, to the exclusion of the rights of a chattel mortgagee, by a mortgagor, who, under the terms of the mortgage, remains in possession of the chattels, works a conversion thereof, for which the mortgagee may maintain an action for conversion without previous demand."

"Conversion consists in a tortious act by the defendant, by which he deprives the plaintiff of his goods, either wholly, or but for a time." McJunkin v. Hancock, 71 Okla. 257, 176 Pac. 740.

"To maintain an action of trover there must be either a taking from the owner, or an unwarranted assumption of control and ownership over the thing, or an illegal use or abuse of it, or proof of demand and refusal to surrender." McJunkin v. Hancock, supra.

To the same effect: George W. Brown & Sons State Bank v. Polen, 132 Okla. 121, 270 Pac. 9; McClintock v. Parish, 72 Okla. 260, 180 Pac. 689; 38 Cyc, p. 2054; 26 R. C. L. 1136; 11 C. J. p. 624.

Defendant, legally speaking, could not have purchased the wheat in good faith, because he had constructive knowledge of the mortgage. The point is made in the brief of plaintiff in error that, while a demand may have been made for the money, no demand was actually made for the wheat. We think it sufficient to say that no one familiar with this record could doubt that plaintiff's whole object was to obtain either the wheat or its value, and that if either had been tendered to him, that would have settled his claim. To give the conduct and conversations of the parties any other interpretation would seem unnatural and out of keeping with the words and actions of ordinary men of average intelligence.

All the facts here are practically admitted. No judgment for the defendant could stand. The plaintiff made out his case, and no sufficient showing for the defendant appears in his evidence. There is but a single question involved, and that is a question of law: Was the plaintiff entitled to recover under all the evidence, or was there some matter to be submitted to the jury upon which reasonable minds could come to a different conclusion? We think there was nothing for the jury to determine, and that the action of the trial court should be affirmed.

HERR, HALL, DIFFENDAFFER, and EAGLETON, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) anno. 51 A. L. R. 591; 5 R. C. L. p. 418; R. C. L. Perm. Supp. p. 1385. (3) 26 R. C. L. p. 1098; 4 R. C. L. Supp. p. 1697; 5 R. C. L. Supp. p. 1440; 6 R. C. L. Supp. p. 1584; 7 R. C. L. Supp. p. 912. (5) 26 R. C. L. p. 1073; 4 R. C. L. Supp. p. 1696; 5 R. C. L. Supp. p. 1438; 7 R. C. L. Supp. p. 911. See "Chattel Mortgages," 11 C. J. §218, p. 530, n. 56, 59. "Trover and Conversion," 38 Cyc. p. 2005, n. 1; 2035, n. 88; p. 2071, n. 17. "Trial," 38 Cyc. p. 1574, n. 21.