No. 34,815

C. W. JOHNSON, *Appellee*, v. THE INTERSTATE SECURITIES COMPANY, *Appellant.*

(103 P. 2d 795)

Opinion filed July 6, 1940.

*C. L. Kagey, Hal M. Black* and *L. M. Kagey,* all of Wichita, for the appellant.

*William Keith* and *C. W. McVickers,* both of Wichita, for the appellee.

The opinion of the court was delivered by

HOCH, J.: A owned a truck—or a truck chassis—which he mortgaged to B, retaining possession. The mortgage covered the truck "and all equipment and attachments thereon, substituted or added

thereto." Different beds were usable on the chassis. Subsequent to the mortgage, a bed specially adapted to hauling grain was built, acquired by A, attached by bolts to the chassis at different times and used by A. While the grain bed was attached to the chassis, A sold it to C, who had no actual knowledge of the mortgage. C used it at times upon another chassis and then loaned it back to A. While it was in A's possession and again attached to the mortgaged chassis, A defaulted in his debt to B, the mortgage was foreclosed, and B took possession of the chassis and grain bed and sold them without the knowledge of C. B having refused to account to C for the value of the grain bed, C brought action in conversion against B, and from a judgment in C's favor, B appeals. Did B, the mortgagee, or C, the purchaser, have prior claim to the grain bed?

The story may be briefly told. Floyd Baird, who lived at Chase, Kan., owned a Diamond T truck—or chassis—which he mortgaged as security for a note to the Clark Motor Company. The mortgage was antedated as of July 22, 1937, recorded on April 16, 1938, and subsequently passed into the hands of the Interstate Securities Company, the appellant. Sometime after the mortgage was given, Baird bought a truck bed made to haul grain, bolted it to the chassis, used it to some extent, and on July 15, 1938, sold it in Wichita for $140 to C. W. Johnson, to whom he owed $120. Johnson paid the balance of $20 in cash, and received a bill of sale. The grain bed was removed and Johnson bolted it to his own truck chassis and used it for some days and then removed it and put back on the chassis another bed used for hauling lumber. Some days later, Johnson loaned the grain bed back to Baird for the alleged purpose of going to Arkansas to get a load of fruit. Johnson testified that he did not see the grain bed again until November when he was working at Liberal and Baird came out there looking for a job. He said that Baird asked him what he wanted done with the grain bed and he told him to take it back to Chase and keep it there until he called for it. He further testified that the following July he went to Chase to get the grain bed and learned that it was gone and that the finance company had taken possession of the truck sometime before and had sold the grain bed along with the chassis. Reimbursement having been refused, this action for conversion was brought against the finance company in Sedgwick county. After a jury had been selected and had heard the evidence,

it was dismissed, upon agreement of the parties, and the issues decided by the court, which found' for the plaintiff and entered judgment for $120. While the appellant contends that there was no evidence upon which to base the amount fixed by the court, the real question, which was raised by demurrer to the evidence and by motion for judgment on the evidence, is whether the lien of the mortgagee was prior to the rights of the purchaser.

The issue may be narrowed by a statement of facts, apparent on the record or admitted, or which must be considered as having been found by the court. The grain bed was not on the chassis when the mortgage was given. While appellant suggests that this fact is open to doubt, the evidence was to that effect, and appellant admits it in the opening statement of its brief. Moreover, the testimony indicated the grain bed had not been built at that time. In the testimony admitted, there is no evidence as to whether there was any bed on the chassis at the time of the mortgage. Appellant testified it didn't know whether there was a bed on it when it took assignment of the mortgage. However, the mortgage described the property as a "Diamond T Truck" (serial number, etc.) and not as a "truck chassis," and appellant argues that this indicates there was a bed of some sort on the chassis.

Another fact that must be accepted is that the grain bed was not so attached as to cause damage to the chassis by removal. It was fastened on by bolts, could be and was removed and placed on the chassis of different trucks. Such practice is common knowledge. There is no support for appellant's position in the cases cited which deal with additions to personal property which become such an integral part thereof as to render separation impossible without injury, and the removal of which renders the remaining property unusable for its intended purpose. Also, the cases cited by appellant which deal with "repairs" are obviously not in point.

The first proposition which confronts us is the common-law rule that property not owned, and especially property not then in existence cannot, strictly speaking, be mortgaged (1 Jones, Chattel Mortgages and Conditional Sales, 228 et seq.), and that such a purported mortgage is void as against subsequent purchasers and attaching creditors. (11 C. J. 434.) Even as between the original parties, some authorities hold that such an executory contract, though in form a chattel mortgage, does not become a valid lien on the after-

acquired property unles the mortgagee takes possession under authority given in the mortgage. (1 Jones, Chattel Mortgages and Conditional Sales, 272, 273.) Also, in line with these doctrines, see *Cameron, Hull & Co. v. Marvin,* 26 Kan. 612; *Long v. Hines,* 40 Kan. 220, 19 Pac. 796; *Bank v. McIntosh,* 72 Kan. 603, 84 Pac. 535; *Danville State Bank v. May,* 126 Kan. 714, 717, 271 Pac. 302.

Some of the earlier cases hold that an attempt to impress a mortgage lien upon property not then in existence is absolutely void. But the later cases generally do not treat the agreement as void, but only unenforceable as to third parties whose rights have intervened. Cases such as those involving crops planted or growing at the time the mortgage is executed, do not, of course, reach the present issue. They relate to property in the process of creation and in which the mortgagor has a present potential ownership.

A word as to a preliminary disagreement about the mortgage provision in the instant case. If the quoted clause "equipment or attachments thereon, substituted or added thereto" refers to equipment which had been added at the time the mortgage was given, the case for the appellee is beyond controversy. We shall here adopt, however, appellant's interpretation that it refers also to that which might thereafter be added.

The gist of appellant's argument is that the doctrine of accession is here applicable and that agreements to impose a lien on after-acquired property are upheld in equity not only as between the parties but as to third persons who take with notice.

On the interesting question of accession, we have examined not only all the cases cited by both parties, but many others. Critical analysis of any considerable number of the cases would unduly prolong this opinion. Some of the later cases dealing with automobile tires and other such removable parts apply the doctrine of the early case of *Clark v. Wells,* 45 Vt. 4, 12 Am. Rep. 187, decided in 1871, which held that new wheels and axles added to a stage wagon, being removable without injury, were not covered by the mortgage. (*Snyder v. Aker,* 134 Misc. Rep. 721, 236 N. Y. S. 28; *Bosquet v. Mack Motor Truck Co.,* 269 Mass. 200, 168 N. E. 800.) Others hold that standardization and other modern practices as to automobiles require departure from the old doctrine in the case of tires and other such removable parts. (*Bozeman Mortuary Association v. Fairchild,* 253 Ky. 74, 68 S. W. 2d 756; *Tire & Vulcanizing Co. v. Auto Stor-*

*age Co.,* 133 Tenn. 515, 182 S. W. 576.)   Some cases turn upon such questions as retention of the title by the conditional seller of the auto parts, or upon possession by the mortgagee.   (*Motor Credit Co. v. Smith,* 181 Ark. 127, 24 S. W. 2d 974; *Bank v. McIntosh,* 72 Kan. 603, 84 Pac. 535.)   The conflict of opinion, frequently noted in the cases, is illustrated by the California case of *Dersch v. Thomas,* 138 Cal. App. 785, 30 P. 2d 630, and the Alabama case of *Hallman v. Dothan Foundry & Machine Co.,* 17 Ala. App. 152, 82 So. 642, both of which involved truck beds, and in which, with slightly distinguishable features, opposite results were reached.

Now as to notice.   Did appellee have *actual* notice?   Upon this review we must conclude he had no knowledge that the truck had been mortgaged.   He so testified.   There was no evidence to the contrary and if the fact of no actual notice be considered essential to his cause of action, it inheres in the finding in his favor.

Did the recording of the mortgage give him constructive notice of the agreement to impose a lien on after-added equipment, and thereby deprive him of the status of a bona fide purchaser and deny him the benefit of the rule which protects such purchasers?   While there is some conflict of authority, the general rule is that constructive notice such as that furnished by the recording of the mortgage is not sufficient in cases where the mortgagor is in possession.   (11 C. J. 435; *Jones v. Richardson,* 10 Metc. [Mass.] 481, 493; *Long v. Hines,* 40 Kan. 220, 19 Pac. 796; 1 Jones, Chattel Mortgages and Conditional Sales, 263, § 157; *Steckel v. Swift & Co.,* 56 S. W. 2d 806.)

In harmony with the leaning of our decisions, which, we think, is in line with the majority view, we conclude that the grain bed, built and acquired by the mortgagor subsequent to the mortgage, and being readily removable without injury to the chassis, and being in the mortgagor's possession, and being purchased by the appellee in good faith for consideration, belonged to the purchaser as against the mortgagee which held a mortgage upon the chassis.

We have considered, but cannot agree with, appellant's argument for reversal on the ground that the court's finding that the grain bed was worth $120 was not supported by the evidence.   There was testimony as to that value a short time prior to the conversion by appellant.   Moreover, the court told the parties when they were agreeing to dismissal of the jury, that he was going to decide the

issue on the law question involved and if he found for the plaintiff, the judgment would be for $120. In the face of that statement, both parties agreed that the question of damages was to be decided by the court.

The judgment is affirmed.