Bob GRIPE and First National Bank of Yale, Oklahoma, Plaintiffs in Error,

v.

L. C. SINOR and O. L. Sinor, d/b/a Sinor Brothers Construction Company, Defendants in Error.

No. 40208.

Supreme Court of Oklahoma.

July 5, 1966.

Paul L. Washington, Oklahoma City, for plaintiffs in error.

Carl W. Longmire, Pryor, for defendants in error.

WILLIAMS, Justice.

The suit out of which this appeal arose was one for replevin of a truck commenced by defendants in error, partners, hereinafter called plaintiffs, against Clifton D. Scott, Bill Mize and Bob Gripe, hereinafter referred to by their names. Scott never was served with summons. The trial court sustained Mize's demurrer to the evidence. The First National Bank of Yale, Oklahoma, intervened and it and Gripe opposed plaintiffs in the trial court and do so here as hereinafter shown.

In their petition the plaintiffs alleged that on the 13th day of January, 1960, Scott and Mize were partners; that on such date Scott, on behalf of such partnership, executed and delivered to plaintiffs his promissory note in the amount of $4950.00; that as security for such note Scott executed and delivered to plaintiffs a chattel mortgage on a "1958 Model ACF 182–A International Twin Screw Dump Truck with the following equipment: 10 to 12 yard Marion Dump bed with Hydrolic Hoist, heater and saddle tanks and West Coast mirrors"; that such mortgage on the 23rd day of February, 1960, was filed for record in Oklahoma County; that on the 20th day of February, 1960, Scott and Mize defaulted in payments on such note; that on some later dates not known to plaintiffs Scott and Mize defaulted on their obligations under such mortgage by removing the property "from the county" and by the sale thereof to Gripe; that Gripe purchased it with knowledge of plaintiffs' note and mortgage; that Gripe holds such property although plaintiffs have demanded possession thereof; and that the sum of $3,615.73 is unpaid on such note.

In his answer, Gripe pleaded that he was the owner of such truck and that he was entitled to possession of same.

As above noted, the First National Bank of Yale, hereinafter referred to as intervenor, was allowed to intervene. In its petition in intervention, intervenor alleged that on December 13, 1960, Gripe executed and delivered to it his promissory note in the amount of $13,500.00; that as security therefor Gripe executed and delivered to intervenor his chattel mortgage on certain described property (including such 1958 International Truck and its equipment); that Gripe was then the owner of such truck and had it in his possession in Pawnee County, Oklahoma; that Gripe defaulted on such note in that he failed to make the payments according to the terms thereof; that $9,000.00 is unpaid on such note; and that intervenor has the right to the immediate possession of such truck.

Plaintiffs filed an answer to intervenor's petition generally denying all its allegations not specifically admitted and further alleging their ownership and filing as above stated of a good and valid chattel mortgage on the property described in intervenor's petition; that said chattel remained in Oklahoma County until sometime after the 9th day of December, 1960; that "said defendants and intervenor had knowledge of said chattel mortgage and that if said intervenor had a chattel mortgage on said property it is subject to the chattel mortgage of this plaintiff."

Plaintiffs also filed a reply to defendant Gripe's answer of purport similar to that of their answer to intervenor's petition and further alleged that defendant Gripe had personal and constructive knowledge of the plaintiffs' chattel mortgage and that he purchased the truck subject to it.

The factual background of the questions with which we are concerned in this appeal is that Scott purchased the subject truck from the Sinors, operated it for some eight months, then sold it or an interest in it to Mize. Mize operated it for about 5 days short of three months and sold it to Gripe, the title being signed over to Gripe by Scott. That title showed a lien in favor of Sinor Brothers Construction Company in the amount of $4930.00. Gripe borrowed $13,500.00 from intervenor bank before he got a new title to the truck, to pay for it and other trucks and equipment he was buying and mortgaged the subject truck (and other trucks, etc.) to intervenor for that amount. From a time some 41 days subsequent to Scott's purchase of the truck, and all during the time of the making of the aforesaid sales and mortgage to intervenor and operation of such truck, a chattel mortgage was of record in Oklahoma County, covering it and securing a note from Scott to the Sinors which mortgage was transferred with the note to the American National Bank of Pryor, Oklahoma, on February 19, 1960, and by the bank transferred back to the Sinors on February 4, 1961.

The parties waived a jury and tried the case to the court. Much evidence was taken by the examination and cross-examination of all the plaintiffs and named defendants. Although Scott had not been served, his testimony was received in a deposition hearing.

The trial court rendered judgment for plaintiffs against Gripe for possession of the truck and its equipment. By its judgment, the trial court further held that intervenor had a lien on the truck herein involved but that such lien was inferior to that of the plaintiffs. From such adverse judgment and the overruling of their motion for new trial, Gripe and intervenor appeal.

Another appeal to this Court involving some of the parties and matters with which we are here concerned was resolved in the case of Gripe v. Walker, Sheriff, Okl., 389 P.2d 484. Gripe had sued the sheriff in Kay County for damages for taking possession of the truck here in question without serving Gripe with a copy of the writ. The trial court there sustained a demurrer to the petition, it not having been alleged or shown that Gripe lived in or had been in Kay County. The judgment of the trial court was affirmed. Meanwhile, an alias writ of replevin had been issued by the clerk of the trial court in the case from which the present appeal arose and defendant Gripe was served. No question is raised herein with reference to these matters.

This appeal having grown out of a replevin action, it is noted that Title 12 O.S. 1961, § 1580 relates to such a suit. That section in part provides:

"In an action to recover the possession of personal property, judgment for the plaintiff may be for the possession, * * *."

It is also noted that 12 O.S.1961, § 556 in part provides:

" * * * Issues of fact arising in actions for the recovery of money, or of specific real or personal property, shall

be tried by a jury, unless a jury trial is waived, * * *."

It has been stated hereinabove that the parties waived a jury trial in the action of legal cognizance out of which this appeal arose and the cause was tried to the court without the intervention of a jury.

For reversal, Gripe and intervenor advance five propositions of claimed error. For purposes of brevity and clarity we treat the odd-numbered propositions first, in their numerical order and treat next thereafter propositions two and four together. By their first proposition, Gripe and intervenor, in effect, argue that a breach of a contract must be shown before a judgment may be rendered thereon. They contend that it was not shown and the trial court did not find either that there had been a default in making timely payments on the note secured by the chattel mortgage in question or that any balance was due at the time of the trial or that the title to the truck covered by the mortgage was transferred to anyone or that the truck was moved any place not known to and consented to by the Sinors. They argue that Scott had sold the truck to Mize, that this was reported to one of the Sinors, who did not object; that the Sinors knew the truck was moved from hauling job to hauling job in various counties and gave their consent. A consideration of the matter of whether the note was in default or not when suit was brought renders further treatment of the matter of consent to transfer of title to Mize and removal of the truck unnecessary.

The note, which the plaintiffs' chattel mortgage secured, was introduced in evidence. The computation on the back of it showed $1449.33 owing as of January 1, 1960 (should be January 1, 1961) and reflected no further payments before suit was brought (in May, 1961). Scott admitted that even under his claim of payments he made, he paid up only through and including one-half of the January 20, 1961, payment. In connection with the testimony of Mr. L. C. Sinor, plaintiffs' can-

celled check of February 4, 1961, paying American National Bank $1449.33 for the re-assignment to plaintiffs of the note and the mortgage here involved was identified and received in evidence. Mize and Gripe denied knowing of the mortgage and made no claim of having kept up the payments scheduled in the note. Intervenor simply claims priority of its mortgage. In view of the foregoing and a short further statement with reference thereto at the conclusion of this opinion, we are unable to agree with defendant, Gripe's, and intervenor's first proposition.

Skipping to the third proposition of plaintiffs in error, it is that the best description of a motor vehicle is the one required by the laws of Oklahoma in connection with an application for its registration.

' Gripe and intervenor seek to impress upon us the fact that plaintiffs' chattel mortgage described the truck in suit no further than to give a number indicating its model number and type and year made, not its motor serial number. Several witnesses, plaintiff and defendant, testified one would have to have its serial number to identify a particular truck.

Defendant Gripe and intervenor assert that as the affidavit for replevin writ contained no serial number, the writ furnished the sheriff had no right to have a serial number in it and as plaintiffs' mortgage had no such number in it, it did not serve to notify intervenor (that it covered subject truck).

They cite, as being determinative under the facts of this appeal, the case of Walker v. Fitzgerald, 157 Minn. 319, 196 N.W. 269, wherein the Court of that jurisdiction held in effect that a description in a chattel mortgage of "one type S. Wilcox, one-ton truck" was not sufficient to charge third parties with notice that the vehicle intended to be so mortgaged was "model 1 Wilcox truck bearing motor number 3051."

Our attention is called to the fact that Mr. Gripe testified that he owned two trucks of the same general description (same model number) as shown in plaintiffs' mortgage.

Gripe received title to the truck in question on December 9, 1960. The transfer on the reverse side of it had apparently been signed before the notary public the previous day (the 8th) by Scott. Mize, who sold the truck to Gripe, could have told Gripe where Scott and Mize resided and where the evidence showed the truck was returned from time to time for repairs and where it was permanently located (Oklahoma County). A check of the chattel mortgage records in the office of the county clerk in that county would have revealed the existence of the mortgage here in suit.

Mize and Gripe both testified Mize told Gripe, when selling him the truck, that it was not mortgaged, that it was "free and clear." However, Gripe's title obtained from Scott through Mize showed on its face "Lien in favor of Sinor Bros. Construction" and "Amount of Lien $4950.00." It is true that some one, before the day of the trial, across the further information on the face of the title, "purchased from O. L. Sinor DBA Sinor Bros. Cont.," had written by hand the word "Nil". Mr. Gripe admitted the notation of the lien undoubtedly was there and definitely testified that the word "Nil" was "on there at the time" he received the title. He further testified that he "could possibly have gotten through motor vehicles check" knowledge about "any liens shown or any mortgages" "on the face of the title."

As opposed to Gripe's and intervenor's proposition last above stated and argument advanced thereunder, plaintiffs cite the case of Phelan v. Stockyards Bank et al., 134 Okl. 13, 276 P. 175, wherein was involved the foreclosure of a conditional sales contract on some cattle. In that case, this Court quoted from the cases of Mathis v. Guaranty National Bank of Porum, 105 Okl. 69, 231 P. 500, involving replevin of some mules, and Hillery v. Waurika National Bank, 100 Okl. 34, 226 P. 1051, for

conversion by purchasing an automobile covered by plaintiff's chattel mortgage, and in its first syllabus said: "It is not essential that property covered by a mortgage be so specifically described that it may be identified by the mortgage alone. The description is sufficient if it suggests inquiry or means of identification which, if pursued, will disclose the property conveyed, and the question of the sufficiency of a description in a mortgage is for the court or jury trying the cause, and where there is evidence reasonably tending to support the verdict the same will not be disturbed on appeal." Also cited by plaintiffs are other cases holding to the same general effect. See West's Okl.Dig. Vol. 4, Part 1, Chattel Mtgs. ☞47.

Mr. Scott said he purchased only the one truck from the Sinors at the time he purchased the one in suit and signed the mortgage here involved back on the truck. Mr. Mize testified he knew Mr. Scott lived in Oklahoma County; that he had checked the chattel mortgage records in the office of the County Clerk of Oklahoma County prior to the trial; that he had purchased only two trucks; that they had not been profitable and he owned none at the time of the giving of his testimony.

In view of what we have recited hereinabove concerning information had by or available to Gripe and what is said hereinafter concerning knowledge had by or available to intervenor, and the general conclusion reached at the end of this opinion, we are of the opinion that the trial judge would have been warranted in finding it to have been a fact that both Gripe and intervenor's loan officer each had actual knowledge and constructive notice of the mortgage here involved when Gripe bought the truck in question and when intervenor accepted the chattel mortgage thereon and that the description of the truck in such mortgage was sufficient in law to identify the truck, and that the mortgage encumbered that truck and that such a finding inheres in the court's judg-

ment. (This conclusion does not require a reliance upon a reference in Gripe's testimony to his having heard an employee of plaintiffs testify in some hearing not included in this record that he had told Gripe he thought there was a mortgage on the truck.)

We are therefore of the opinion that the description of subject truck in the Scott chattel mortgage to Sinors was sufficient to notify Gripe and intervenor that it was the truck that was intended to be so mortgaged. We find no merit in defendant Gripe's and intervenor's third proposition.

Skipping now to appellant's fifth proposition, it is that a motor, tires and tubes and body placed on a truck do not become a part of the truck by the law of accession. Gripe and intervenor assert that Sinor Brothers took the engine that was in the truck, when the sheriff turned possession of it to them, out of the truck, converted it to their own use and installed another engine in the truck. They say that only three of the 10 tires on the truck when possession was taken from Gripe remained on the truck at time of filing their brief herein; that they too were converted by plaintiffs to their own use. They state that the bed on the truck when possession was taken had been put on it by Gripe; that it was detachable and Gripe should have had judgment for possession of it. They assert they were entitled to damages and that plaintiffs' lien, if any, should be determined to have become extinguished because of such alleged wrongful conversion of such items while the truck was in custodia legis.

Defendant and intervenor cite the cases of Havas Used Cars v. Lundy, 70 Nev. 539, 276 P.2d 727; Wilson Motor Co. v. Dunn, 129 Okl. 211, 264 P. 194, 57 A.L.R. 17; P. & E. Finance Co. v. Wooden, 205 Okl. 78, 235 P.2d 691; K. C. Tire Co. v. Way Motor Co., 143 Okl. 87, 287 P. 993; Olive's Store v. Thomas, Okl., 294 P.2d 562; Johnson v. Interstate Securities

Co., 152 Kan. 346, 103 P.2d 795, as being in support of their proposition.

Plaintiffs remind us of documentary proof introduced that plaintiffs purchased the truck bed they say they sold Scott and which they testified is the same one still on the truck and that the trial judge examined it and found it to be the same one they sold to Scott. They say motors and tires wear out and that replacement parts are covered by the mortgage, where, as here, it has not been shown, contrary to the facts in appellants' cases, that the rights of conditional sales vendors, etc. have intervened. Plaintiffs cite Davy et al. v. State ex rel. Mothersead, Bank Commr., 130 Okl. 91, 265 P. 626, and authorities therein quoted and seek to distinguish P. & E. Finance Co. v. Wooden, supra, and Wilcox Motor Co. v. Dunn, supra, cited by Gripe and intervenor.

■ After examining appellants' authorities and conceding for the moment that they generally stand for the points for which cited, we still recall the testimony that the truck was in the same condition and carried the same equipment at time of trial it had on it when sold to Scott. Again there inheres in the general judgment of the trial court included findings in favor of plaintiffs as to these issues of fact. We are unable to agree that appellants have sustained their fifth proposition.

Going back to such parties' second proposition, it is that a chattel mortgage should be filed in the county where property mortgaged is located and a filing in the county where the mortgagor resides is not sufficient (to notify purchasers and encumbrancers of its existence).

Cited in support of the contention is 46 O.S.1961, § 57. The pertinent part of that section reads as follows:

"A mortgage of personal property is void as against creditors of the mortgagor, subsequent purchasers, and encumbrancers of the property, for value, unless the original, or a certified copy thereof, be filed by depositing the same in the office of the County Clerk of each County where the property mortgaged, or any part thereof, is at such time situated; * * *."

Such parties also cite the case of Burke v. First National Bank of Yukon, 197 Okl. 52, 168 P.2d 285, referred to hereinafter. These parties make point that the mortgage was filed in the home county of Scott, not where the truck was "at such time situated."

We here note that the section of our statutes next following that cited by appellants and just above quoted, and being 46 O.S.1961, § 58, provides in part that:

"The filing of a mortgage of personal property, in conformity to the provisions of this article, operates as notice thereof to all subsequent purchasers and incumbrancers of so much of said property as is at the time mentioned in the preceding section located in the county or counties wherein such mortgage or authenticated copy thereof is filed; * *."

The latter part of that section speaks of the county in which the property, subject of the mortgage, "is permanently located".

Gripe and intervenor also cite the Springfield Missouri Court of Appeals decision in Morris Plan Co., etc. v. Jenkins, 216 S.W.2d 160, which refers to our decision in Burke v. First National Bank of Yukon, supra, and quotes our statutes 46 O.S.1961, §§ 57 and 58, and which held no rights had accrued to the mortgagee under a mortgage on trucks filed in Oklahoma County under facts that the mortgagor may have lived in Oklahoma City but the trucks were outside Oklahoma when the mortgage was given and filed and where there was no conclusive evidence, if any at all, that the trucks were ever even in Oklahoma.

Gripe and intervenor emphasize that Sinor Brothers agreed for the truck to work outside Oklahoma and that the mortgage was never refiled in any other county. They cite Cowart v. Allen, 37 Okl. 708, 134 P. 66. In that case, under the facts that the mortgagee had taken the mortgage on certain horses in suit, where-

in it was recited they were to be kept in Okfuskee County (although they were then in Lincoln County), and filed the mortgage in Lincoln County and defendant purchased them more than 2 years later in Pottawatomie County for value and without actual notice and the mortgage had not been refiled in Okfuskee County, where the horses had been kept, the judgment in favor of the mortgagee Allen was reversed. In Burke v. First National Bank of Yukon, supra, we stated that Cowart v. Allen "holds that regardless of the residence of the mortgagor the mortgage should be first filed where the property is situated", (evidently meaning Okfuskee County, see Cowart v. Allen, supra, syllabus paragraphs 1 and 2.)

Gripe and intervenor "further contend that where a mortgagee learns of the removal of the mortgaged automobile or truck into another county or state and just fails to take steps reasonably to assert his claim he is deemed to have waived his lien." They cite the case of Atha v. Bockius, 39 Cal.2d 635, 248 P.2d 745. We are of the view that that case is distinguishable since the Texas mortgagee was held to have been estopped to assert his mortgage as a defense in an action against him for conversion, under facts that the automobile had been registered in both Louisiana and California, the Texas mortgagee had taken his mortgage under the Louisiana registration, learned the car had been taken to California, traced it there and without filing his mortgage in California waited 6 months until after the auto "had been sold under California registration to innocent purchaser for value without notice and prior mortgage lien under California registration had been satisfied by purchaser and discharged."

They also cite Richardson v. Shelby, 3 Okl. 68, 41 P. 378. In that case there was involved a Kansas statute requiring that an affidavit he filed by a chattel mortgagee within some 11 months of the filing of such a mortgage describing his rights. Absent compliance with applicable statute, the Court said, "the registry will

be treated as a complete nullity". That case we deem to be distinguishable under the facts.

Plaintiffs argue that a chattel mortgage should be filed in the county where the chattel is permanently located, citing section 58 of our statute, supra, Burke v. First National Bank of Yukon, supra, Yellow Mfg. Acceptance Corp. v. Rogers, 235 Mo.App. 96, 142 S.W.2d 888 (distinguished in Morris Plan Co., etc. v. Jenkins, supra). They say one with actual knowledge may not become a purchaser for value even if a mortgage be not filed, citing Morgan v. Stanton Auto. Co., 142 Okl. 116, 285 P. 962, Strahorn-Hutton-Evans Commission Co. v. Florer et al., 7 Okl. 499, 54 P. 710; R–F Finance Corp. v. Summers, 168 Okl. 179, 32 P.2d 312.

In the case of Farmers' State Bank of Wheatland v. North Oklahoma State Bank of Britton, 104 Okl. 248, 230 P. 914, 915, an appeal involving the priority of chattel mortgage on a team of mules, referring to the cases of Snodgrass v. J. I. Case Threshing Mach. Co., 70 Okl. 303, 174 P. 515, and First National Bank of Vinita v. Guess, 72 Okl. 125, 179 P. 29, this Court said:

"It will be found from an examination of both of the cases cited that it was the fact of permanent location of the chattels for a period of 120 days in the county to which the property had been removed upon which the decisions in those cases rested * * *.

"It is true the mules were at various times taken across the line into Canadian county, but it cannot be said after a careful examination of the evidence that they were continuously kept for a period of 120 days in Canadian county, and therefore they were not 'permanently located' in the county to which they had been removed within the intent and meaning of section 7651 C.S.1921 [now 46 O.S. 1961 § 58]."

It has been noted herein that appellants cited the case of Burke v. First National Bank of Yukon, supra. That case involved the replevin of a truck. Therein

this Court held that a chattel mortgage should be filed in the county where the property was located as distinguished from that in which the mortgagor lived if the latter is a different one. We there said,

"In Continental Supply Co. v. Badgett, 114 Okl. 1, 242 P. 209, this court held: (1) That the chattel mortgage should be filed in the county where the property was located and that a filing in the county of the residence of the mortgagor was not sufficient; * * *."

Continuing and referring to Cowart v. Allen, 37 Okl. 708, 134 P. 66, the Court in Burke v. First National Bank, supra, said:

"[I]t holds that regardless of the residence of the mortgagor the mortgage should be first filed where the property is situated. To the same effect see Mitchell v. Guaranty State Bank, 68 Okl. 110, 172 P. 47."

See also the case of First Nat. Bank of Vinita v. Guess, 72 Okl. 125, 179 P. 29, 30, holding that a team of mules was "permanently located" in Mayes County although the then owner and mortgagor by an earlier chattel mortgage occasionally during such period "visited his home in Delaware county."

▆ As we said in the case of Drum Standish Commission Co. v. First National Bank & Trust Co. of Oklahoma City, 168 Okl. 400, 31 P.2d 843, "[c]onstructive knowledge of the existence of a chattel mortgage lien on personal property is imparted to subsequent purchasers, incumbrancers and creditors by filing the mortgage in the county where such property is situated in accordance with the provisions of section 11277 O.S.1931. [46 O.S.1961 § 57]. If the property mortgaged is not situated in the county where the mortgage is filed at the time of the execution and filing thereof, but is intended to be removed to such county and later becomes situated therein, the mortgage on file becomes constructive notice from the date of the arrival of the property within the county."

Scott testified that while the truck was in Locust Grove, Mayes County, when he bought it, he personally, the day of the purchase, drove it to Oklahoma County; that the weather was bad (inferring Scott could not work the truck); that "it was only there [Oklahoma City] 6 or 8 weeks. There was a payment due on it, and I got my co-signer to go ahead and make the payment on it". The record reflects that the first installment on the note secured by the mortgage was due February 20th, that the mortgage was recorded in Oklahoma County February 23 (7 weeks from the date it was executed and within the 8 weeks mentioned in Scott's testimony just above quoted), that the mortgage had been assigned by Sinors to the American National Bank in Pryor on February 19th, the day before the first installment came due, that the payment was not made by Scott and that on April 15, 1960, the Sinors paid that bank by their check of that date, which was paid and cancelled, two of Mr. Scott's monthly payments in the total amount of $660.00.

▆ The trial court was warranted in finding that the truck here in question was located in Mayes County when Scott bought it on January 13, 1960, but was immediately removed to Oklahoma County, the county of Scott's residence; that Scott and later Mize kept it permanently in Oklahoma County except when it was working temporarily in other counties; that it was always returned to Oklahoma County for repairs and that it had been in a garage in Oklahoma County, the residence of its respective former owners Scott and Mize, and the place of its "permanent location" for some two to four weeks when Gripe purchased it. The trial court well could have believed and there inheres in its judgment a finding that the truck was permanently situated in Oklahoma County when Gripe purchased it and when intervenor accepted mortgage from Gripe covering it. We are unable to sustain the parties' second proposition.

A point made by appellants in their second proposition just discussed is of effect that plaintiffs should have refiled their

mortgage in Pawnee County but did not do so and waived or lost their lien or permitted it to become inferior to that of intervenor. While we are in agreement that the proper county in which one should file a chattel mortgage is the one in which the mortgaged chattel is permanently located, for reasons hereinafter stated we do not agree with appellants' argument that plaintiffs should have refiled their mortgage in Pawnee County in order to preserve its validity and force.

We here observe the similarity of appellants' contention in their fourth proposition. It is that a chattel mortgage, recorded in the county to which the property has been removed and where it has been located for more than 120 days since its removal, takes precedence over a chattel mortgage or sales contract recorded in another county prior to the removal of the property and not recorded in the county to which the property has been removed during the 120 days next after its removal thereto, and assuming the second mortgagee had no actual knowledge of the existence of the first mortgage when it took its chattel mortgage, now asserted to be ahead in priority of the one taken first in point of time but not filed in the county to which the property has been removed.

Gripe and intervenor argue "There is no evidence that the First National Bank of Yale, Oklahoma, had actual or constructive notice of the mortgage filed by plaintiff in Oklahoma. The evidence further shows that the truck was situated in Pawnee County from December 1960 until suit was filed in this case in May 1961. At least more than 120 days had elapsed since the property had been permanently located in Pawnee County. We respectfully assert that in order for plaintiff to perfect its lien that it should have filed a certified copy of the mortgage filed in Oklahoma County in Pawnee County if the Oklahoma County filing was good. Plaintiff knew that the truck was owned by Bob Gripe and that it was located in Pawnee County on and after December, 1960. * * *

(T)hat if plaintiff ever had a valid lien that it expired 120 days after the truck was permanently located in Pawnee County, which would be in April, 1961. Thereafter the plaintiffs stood in the position of the holder of an unrecorded chattel mortgage and could assert no right dependent upon constructive notice against The First National Bank of Yale. * * * (T)hat the fact that the First National Bank of Yale, Oklahoma, took an executed mortgage on the property, in question, in this case within the 120-day period is not controlling. * * * (T)hat upon the expiration of the 120 days after the property came into Pawnee County that the plaintiffs herein were in the position of the holder of an unrecorded chattel mortgage. That the lien and mortgage of the First National Bank of Yale, Oklahoma is superior to the mortgage of plaintiffs and judgment should be rendered for possession of the property in favor of the intervenor." ·

Gripe and intervenor cite Henry v. Harris, 206 Okl. 357, 243 P.2d 663, and Arnold v. Wittie, 99 Okl. 236, 227 P. 132.

Plaintiffs say that the proof showed that intervenor took Gripe's mortgage on December 13, 1960; and that the truck was being worked on in a garage in Oklahoma County from December 9, 1960, to some days after December 13, 1960. They urge that intervenor was charged with constructive notice of plaintiff's chattel mortgage of record in Oklahoma County when intervenor took its mortgage. They deny the truck became permanently located in Pawnee County. Rather, they contend that after Gripe purchased it and mortgaged it to intervenor it was never permanently located in any one county for 120 days, and further contend intervenor "could not become an incumbrancer 'in good faith'". They refer us to Morgan v. Stanton Auto Co. et al., 142 Okl. 116, 285 P. 962.

As has been noted hereinabove the trial court held intervenor's lien to be inferior to plaintiffs' mortgage. The trial court found specifically that the title delivered to Gripe had written thereon "Lien in favor

of Sinor Brothers Construction Company" with the word "Nil" written in long hand on the title and that Gripe knew the defendants Scott and Mize and their business relationship with the truck to some extent.

The trial court concluded that Oklahoma County was the proper one for plaintiffs to record their mortgage; that the description in the mortgage of the truck was sufficient to put "Gripe on notice, particularly in light of the fact that Scott and Mize were one and two truck owners and this was known to Gripe."

Such court concluded Gripe should have been alerted, if not notified, by notation of lien and presence of the word "nil" on his title transfer from Scott. The court held for plaintiffs on the matters of the engine, tires and bed of the truck.

In its conclusions included in its judgment, the trial court stated:

"As to the First National Bank of Yale, it is the opinion of the Court that any lien they have would be subject to that of the plaintiff in view of the above finding."

Preliminary to further discussion of the appellants' second and fourth propositions, we are here reminded that there was evidence from Gripe's cancelled checks and from evidence discussed throughout the foregoing portions of this opinion from which the trial court could have believed the truck was still in the garage in Oklahoma County when Gripe borrowed the money from intervenor which the subject mortgage to intervenor was given to secure and in turn used by him to buy the truck and pay for its repairs.

The last part of 46 O.S.1961, § 58 reads as follows:

"Provided, that when a mortgaged chattel is moved into this State, or from one county to another, any previous filing of the mortgage shall not operate as notice as against subsequent creditors, purchasers, mortgagees or incumbrancers for a longer period than one hundred and twenty days after such removal, but such mortgage must be refiled in the county to which the chattel is removed and in which it is permanently located."

It is this statutory provision appellants would have us apply to their situation rather than have us place their conduct up against the measuring stick of 46 O.S. 1961, § 57, supra, the implied meaning of which, converse to its negatively stated explicit meaning, is that one purchasing or taking a mortgage on a chattel located premanently in a county where a previously filed valid mortgage is of record takes with constructive notice of that prior lien. See also the first part of 46 O.S.1961, § 58 supra and quotation from Drum Standish Commission Co. v. First National Bank & Trust Co. of Oklahoma City, supra. Our statutes above quoted were taken from the Dakota statutes (C.L.Dak.1887 §§ 4378, 4379.) Concerning such sections, the Supreme Court of Dakota in Grand Forks Nat. Bank v. Minneapolis & N. Elevator Co. (1889), 6 Dak. 357, 43 N.W. 806, said:

"The requirement of the filing is to cut off rights of innocent third parties. * * * No hostile interests can intervene. * * * [A] mortgage of personal property to be acquired or created in the future, duly executed, and filed in the office of the register of deeds of the county in which such property is situated before and at the time of its creation or acquirement, becomes thereupon a good and valid mortgage between the parties and all subsequent purchasers and incumbrancers, without further ratification on the part of the mortgagor, or any affirmative act on the part of the mortgagee, subsequent to the attachment of the mortgage lien."

Our Legislature adopted such statutes with that interpretation. Blevins et al. v. W. A. Graham Co., 72 Okl. 308, 182 P.2d 247. The proper filing of a chattel mortgage charges third parties with notice of its contents to the same extent as if they had actual notice. United States Zinc Co. v. Colburn, 124 Okl. 249, 255 P. 688. See also First National Bank of Cushing v. A. T. & S. F. Ry. Co., 77 Okl. 93, 186

P. 1086 and other cases cited at 46 O.S.A. § 58, note 6.

Intervenor loaned Gripe $13,500.00 on other property and on the truck here in question. This transaction occurred 4 days before Gripe purchased a new title to this truck. Intervenor's officers either saw Gripe's old title transfer, which Scott signed, or they did not. They may have taken Gripe's word for the truck being clear of liens. If they saw the title, the information showed on its face that plaintiffs had a lien for $4950.00 against the truck. Also the word "nil" had already been written on the·face of the title to the truck or it had not been. Scott said he did not write it on there, Mize said he got the title on December 8th, and that he gave it to Gripe the next day, December 9th. Gripe admitted the lien probably showed on the title when he got it but said he knew definitely that the word "nil" was on there at the time he received it.

No officer or other witness appeared to testify for intervenor concerning whether it knew plaintiffs had mortgage on the truck or not, and as to whether it knew the word "nil" was on Gripe's title or not. Gripe testified he had stated in a deposition hearing that to the best of his knowledge the Yale Bank knew the truck was in Oklahoma City with the motor out and knew Gripe was there negotiating for the purchase of the truck.

■ From the fact that the Yale Bank, which had priority of its lien in the amount of $13,500.00 at stake, failed to bring forward any witnesses to participate in giving the court the benefit of any testimony available to the Bank to aid the Court in its search for the truth concerning the relative rights of the respective parties involved, the trial court might have inferred that such Bank had no testimony calculated to help its case available to it. Possibly the trial court was inclined to wonder as to the whereabouts on the day of the trial of intervenor bank's loan officer who dealt with Mr. Gripe. 47 O.S.1961, § 23.6 provides for the transfer of title when a motor vehicle is sold and requires the purchaser to acquire a new title from the Oklahoma Tax Commission within 10 days. Possibly the trial court wondered whether such officer would have loaned Mr. Gripe $13,-500.00 on the basis alone of a statement by Mr. Gripe that he owned title to the truck. Had he so testified the trier of the facts might have been justified in finding the Yale Bank did not know plaintiffs had a mortgage, were it not for other matters covered hereinafter. It appears the intervenor would have the trial court assume that the intervenor had no actual notice of the existence of plaintiffs' mortgage when it took its own.

■ The burden rested upon the intervenor in the trial court to prove to its satisfaction by a fair preponderance of the evidence that intervenor's right to possession of the truck was superior to that of plaintiffs.

■ In the case of Commercial Credit Co. v. Harjo, 178 Okl. 397, 63 P.2d 686, this Court said:

"In a replevin action the burden is upon the plaintiff to prove, first, that·he is the owner of the property in question or has a special interest therein; second, that he is entitled to the immediate possession of the same; and, third, that the property is in the possession or under the control of the defendant, and that the defendant wrongfully detained the same from the plaintiff."

For other cases holding of the same effect see 12A West's Okl.D. 111, Replevin ■. The burden is on plaintiff to establish his right to recover by a preponderance of the evidence. Kerfoot v. State Bank of Waterloo, Ill., et al., 14 Okl. 104, 77 P. 46. "[P]laintiff must recover upon the strength of his own title, or right to possession of the property, described in his pleadings, and cannot rely upon the weakness of title or right of possession in his adversary." Producers Supply Co. v. Sinclair Oil & Gas Co., 105 Okl. 47, 231 P. 279.

The case of Rozen v. Mannford State Bank, 177 Okl. 171, 58 P.2d 119, decided

by this Court, was an appeal from a judgment of the lower court in favor of plaintiff in a replevin suit wherein Rozen had been permitted to intervene as he claimed title to the property in controversy. 12 O.S. 1961, § 237. The Court, referring to his having been permitted to intervene, said:

"When this was done, the intervenor assumed the position of plaintiff in the action and thereafter had the burden of proving his right to the possession of the property by clear preponderance of the evidence."

The Court held intervenor had wholly failed to sustain the burden and affirmed the judgment of the trial court.

We determine the trial court would been warranted in finding and concluding that intervenor bank had a duty to produce testimony if it had any demonstrating that it had no actual knowledge, when it took its mortgage from Gripe, of the existence of plaintiffs' mortgage. In the case of Brooks et al. v. Garner, 20 Okl. 236, 94 P. 694, rehearing denied 97 P. 995, plaintiff Garner obtained a judgment which this Court affirmed decreeing himself to be the equitable and legal owner of an Oklahoma City townsite lot, although the lot had been deeded to one Price by the townsite commission and by Price deeded to his sister Scarborough in Illinois and by her deeded to Brooks. Price had taken title under circumstances of there being a contest pending before the Commissioner of the General Land Office between Garner and one Word as to right to title to the lot. The Court said Price knew or was bound to know of the contest and that he would be a trustee for Garner in case Garner should win. Plaintiff sought Scarborough's deposition but she did not give it. The trial court sustained an objection of defendants to an effort to show Price told her not to give it. She did not attend the trial, although, as said by this Court, voluminous pleadings pended in the District Court of Oklahoma County for years, impugning the good faith and motives of Scarborough and Price; "yet she failed,

either on the solicitation of plaintiff, or of her own accord, to appear either personally or by deposition, and testify."

Scarborough's deposition or her testimony at the trial would have assisted the trial court in resolving an issue involved as to whether she knew of Garner's rights to the property at the time she was said to have received a deed from her brother for which she paid no valuable consideration.

In the opinion in that case, this Court (pp. 700–701 of the Pacific Report), quoting from various other cases, said:

"* * * When a defendant can by his own testimony throw light upon matters at issue, necessary to his defense, and peculiarly within his own knowledge, if the facts exist and he fails to go upon the witness stand, the presumption is raised, and will be given effect to, that the facts do not exist. * * * The question is not upon his right to stay away, but upon the motive which may have caused his absence. A man of ordinary intelligence must know that his failing to appear when he had a strong motive to appear, would be evidence against him. * * * He prefers any inferences to giving his testimony. Why? Because no inferences can be more adverse than would be the testimony he would be obliged by the truth to give. * * * No judge exists who would not, if the trial had been before him, regard this as a fact bearing on his decision. * * * [W]here facts are peculiarly within the knowledge of one of the parties, it is his duty, and the moral and generally the legal burden is on him, to disclose them; and his failure to do so will strengthen the proof of his antagonist, and leaves his own side devoid of any favorable presumption. * * * In * * * civil cases presumptions arise from the connection of parties, the circumstances surrounding them, the motive these circumstances and the connection may create, which become conclusive, if unexplained. When explanation lies within the power of the party, the presump-

tion strengthens, if it is not as full and clear as the party could and ought to have made it. * * *"

The Court at pages 701–702, referring to the facts in its own case (Brooks v. Garner) said:

"* * * The plaintiff, by reason of this inherent situation, lacks the power of delving into the minds of the parties and drawing forth physical evidence of the * * * motives of his adversaries; and he is thereby driven to the necessity of establishing it by circumstantial evidence * * *."

The Court concluded the deed to Scarborough was a mere sham or that she had notice and was the same as her grantor-brother, a trustee for Garner, the plaintiff. In denying rehearing, the Court (p. 996 of 97 P.) said:

"In the decision rendered, while we did not find that Mrs. Scarborough had actual notice of the claim of Garner, we did find that, in view of the pleadings, issues, and evidence, it was her duty to have testified or to have her claim subjected to the unfavorable presumption arising by her failure, and that the burden was upon her to clear up for the court those things which she was in a pre-eminent position to do, and that this burden was not discharged by her."

In the case of Van Arsdale & Osborne v. Young, 21 Okl. 151, 95 P. 778, this Court had before it an appeal by plaintiff in error, plaintiff below, from a judgment for defendant in plaintiffs' action upon a note given for premium on an insurance policy on defendant's wheat crop. Defendant admitted signing the note and assumed and sustained the burden of showing he received no policy. The plaintiff argued that it was defendant's duty, rather than showing he received no policy, to show that his application had not been received and approved. In the trial court plaintiff demurred to defendant's evidence. The trial court overruled plaintiffs' demurrer to defendant's evidence on the ground that while ordinarily it might be defendant's duty to show his application had not been approved, "The evidence of the acceptance and approval, if it existed, was entirely in the hands of the opposite party." The trial court added it would have been easy for plaintiffs to make the proof but "a difficult one for defendant to have established its absence." This Court affirmed judgment for defendant.

See also 22 C.J. 81–82 Evidence § 24, and 31A C.J.S. Evidence § 113, p. 190.

In Guaranty Life Insurance Co. v. Nelson, 187 Okl. 56, 101 P.2d 627, 630, this Court affirmed a judgment for plaintiff for the amount of an insurance policy ($1000.00) despite plaintiff having entered into an agreement based on adjuster's statements to settle for $600.00. Defendant company did not make a full and complete defense, including a showing of the nature of the basis of its claim by its adjuster to plaintiff at time of purported settlement that it could defeat his claim for the amount of the policy on his brother's life. The Court (p. 630 of the Pacific Reporter) said:

"It is the general rule that where the party who has not the general burden of proof possesses positive and complete knowledge concerning the existence of facts which the party having that burden is called upon to negative or where for any reason the evidence to prove a fact is chiefly, if not entirely, within his control, the burden rests on him to produce the evidence."

In the appeal now before us, we determine that there inheres in the judgment of the trial court, a finding of effect that intervenor had not shown that it had no actual knowledge of plaintiffs' mortgage when on December 13, 1960, it took its own mortgage from defendant Gripe. We deem such a finding to have been warranted, based on the evidence we have considered in the discussion of this (fourth) proposition and elsewhere in this opinion, from which the trial court could have found that Gripe's title to the truck showed plaintiffs' lien to be in existence, that Gripe knew the word "nil" was written on the face of the title, that intervenor bank's officers relied

on Gripe having a title when they made him a loan on the specific truck, they knew it was in a garage in Oklahoma County, that the description of the truck in the intervenor's chattel mortgage coincided exactly with the same description in Gripe's old title obtained from Mize and by Mize from Scott, and that not a witness from intervenor bank took the stand to deny either seeing the title or noting its contents or having actual knowledge of plaintiffs' mortgage when taking its own mortgage. In other words, we determine the trial court was warranted in finding and did in effect find that intervenor bank had actual notice of the existence of plaintiffs' mortgage at the time it took its chatel mortgage from Gripe.

There is still another matter which may have helped the trial court make the determination it reached in the case. The intervenor bank took its mortgage on the basis of title being in Gripe, either looking at the paper evidence of his title or taking Gripe's word for it that the truck was his property. The bank could assume Sinor or some one had given Gripe possession, control and some measure of apparent right of possession, title or "friction grip" on the title to the truck. But since Gripe was required by law to get the old certificate of title to the truck and purchase a new title to it, what title could intervenor bank lawfully and logically ascribe to Gripe by way of actual ownership other than the one the facts upon investigation of the appearances would disclose?

In the case of Kerfoot et al. v. State Bank of Waterloo, Ill., et al., 14 Okl. 104, 77 P. 46, supra, this court said:

"As a general rule, a mortgagee and his assignee acquire only a lien on the interest of the mortgagor in the property mortgaged."

In the case of Bank of Commerce of Ralston v. Gaskill, 44 Okl. 728, 145 P. 1131, as quoted in Cassity v. First National Bank of Tonkawa, 143 Okl. 42, 287 P. 392, 395, it is said:

"When the mortgagor of personal property, being in possession before default and having the right of possession under the terms of the mortgage, sells the entire property to another, who has notice of the mortgage, either actual or constructive, the purchaser acquires only the interest of the mortgagor, and holds subject to the mortgage; and in such case, after default, the mortgagee may maintain an action against such purchaser for the wrongful conversion of the property mortgaged, purchased by him."

If the trial court believed that intervenor had a duty to investigate to see whether the facts backed up the appearances of Gripe having title to the truck, it may have determined that good business practice and common knowledge indicated the propriety of and the need for intervenor's loan officer making a long distance telephone call to the Oklahoma Tax Commission and inquiring as to what information was contained in the filed carbon copy of any title previously issued concerning the described truck. This would have lead in the ultimate to knowledge that Sinors were due at least $1449.33 on the note and mortgage.

As was said by this Court in the case of Acacia Oil & Gas Co. v. Tidal Oil Co., 112 Okl. 210, 239 P. 246:

"In the trial of a replevin suit to the court without a jury, and the controlling question to be determined is the ownership of the property involved, the finding and judgment of the trial court will not be disturbed on appeal where there is competent evidence in the record reasonably tending to support the judgment."

In the case of Elwood Oil & Gas Co. v. Gano, 76 Okl. 287, 185 P. 443, this Court said:

"When a jury is waived and a cause is tried to the court and the finding of the court is general, such finding is a

finding of every special thing necessary to be found to sustain the general finding, and such finding, when reasonably supported by the evidence in the case, is conclusive upon this court upon all doubtful and uncertain questions of fact so found."

We conclude that Mr. Gripe may not be said to have bought the truck in question and intervenor may not be said to have accepted Gripe's mortgage to it thereon, free of knowledge and notice of the existence of the mortgage. In our view, the trial court was warranted in finding from the evidence that Gripe and intervenor's loan officer each had actual knowledge and/or constructive notice of the existence of such mortgage and that such a finding also inheres in the judgment of the trial court.

We further conclude that the general principles just above quoted from Acacia Oil & Gas Co. v. Tidal Oil Co., supra, and Elwood Oil & Gas Co. v. Gano, supra, apply in our consideration of the facts concerned in the foregoing treatment of each of appellants' respective propositions.

Our determination herein renders unnecessary any further consideration of the claims of the parties, and citations by them submitted, with respect to whether intervenor bank's chattel mortgage came to have priority over plaintiffs' mortgage after Gripe's truck had been permanently removed from and located outside Oklahoma County for more than 120 days.

The events with which we are concerned in this appeal occurred before our Commercial Code (12A O.S.1961, §§ 1–101 to 10–104) became effective and it has no application herein.

The judgment of the trial court is affirmed.

JACKSON, V. C. J., and DAVISON, IRWIN, HODGES and LAVENDER, JJ., concur.

HALLEY, C. J., and BLACKBIRD and BERRY, JJ., dissent.